QUALITY SHEET METAL COMPANY, LTD., Plaintiff-Appellee, v. WOODSON K. WOODS, III, Defendant-Appellee, Cross-Appellant, and DILLINGHAM BROTHERS, LTD., Defendant-Appellant, Cross-Appellee

NO. 6436

MAY 6, 1981

HAYASHI, C.J., BURNS, J., AND CIRCUIT JUDGE KATO IN PLACE OF ASSOCIATE JUDGE PADGETT, RECUSED

OPINION OF THE COURT BY BURNS, J.

This is an appeal by Dillingham of Quality's judgment against it on the grounds that the record is insufficient to support the conclusion that Dillingham is liable to Quality. We affirm this judgment.

This is also an appeal by Woods of Dillingham's judgment against it on the grounds that the judgment is barred by Woods' prior default judgment against Dillingham. We reverse this judgment because the claim upon which it was based was *res judicata.*

Woods hired a general contractor to construct his residence. The general contractor hired a roofing subcontractor. The roofer obtained his materials from Dillingham. The entire project was completed in early 1968. Thereafter, the roof leaked, and Woods contacted Dillingham who contacted Quality who inspected the leaking roof and recommended corrections. After being contacted by Dillingham's employee, Quality did the work early in 1969. Sometime after 1971, Honolulu Roofing Co. installed an entirely new wood roof over the metal roof which had been repaired by Quality.

On October 1, 1970, Quality sued Woods and Dillingham alleging: "On or about June 20, 1969, Defendants became indebted, jointly and severally, to Plaintiff in the total sum of $8,202.09, as and for certain residential repairs or modifications to the Woodson [sic] residence. . . ." Dillingham failed to answer, and on November 12, 1970, the court clerk filed an entry of default. Woods answered that Dillingham, not he, was liable for the debt; filed a counterclaim against Quality alleging that Quality's "attempts at correction have caused additional leaks. . . "; and filed a cross-complaint against Dillingham alleging in part:

1. On or about January 1, 1969, Defendant Dillingham Brothers, Ltd. undertook to supply materials and direct installation of the roof at the residence of Defendant WOODS at Paauilo Mauka, Hawaii.

2. The roof, as installed, is faulty, leaks and has resulted in damage to Defendant WOODS' house and necessitates the installation of a new roof to prevent further damage, all in the sum of TWENTY THOUSAND DOLLARS ($20,000.00).

WHEREFORE, Defendant WOODS demands judgment as follows:

\* \* \* \* \*

3. Against Defendant Dillingham Brothers, Ltd. in the amount of $20,000.00, attorney's commissions, interest and costs of Court.

Dillingham failed to answer the cross-complaint, and on January 8, 1971, the court clerk filed an entry of default. On March 2, 1971, the

court clerk filed a second entry of default.

On February 25, 1972, a $9,549.60 default judgment was entered in favor of Quality against Dillingham. On the same day the court approved a stipulation dismissing without prejudice both Quality's complaint against Woods and Woods' counterclaim against Quality.

On April 13, 1972, a default judgment was entered in favor of Woods against Dillingham in the amount of $18,964.90 plus interest, computed as follows: $13,900.00 for replacement of the roof on the residence; $3,800.00 for repair of the water staining of the interior and exterior; $750.00 as recompense for the dislocation of the Woods family during construction and the painting; $20.00 for court costs; and $494.90 for attorney's commissions.

On April 12, 1973, Dillingham moved under Rules 60(b)(1) and (4), Hawaii Rules of Civil Procedure (HRCP) (1954), to set aside both default judgments. With respect to the judgment in favor of Woods, on June 19, 1973, the court filed an order setting aside only amount of the judgment, not the judgment itself. With respect to the judgment in favor of Quality, on April 5, 1974, the court set aside the entire judgment.

On May 8, 1974, Quality filed an amended complaint against Woods and Dillingham alleging the same cause of action stated in the original complaint. Dillingham filed a cross-claim against Woods alleging that when it contacted Quality, it was acting "on behalf of and as agent of" Woods.

On September 27, 1974, Dillingham satisfied Woods' default judgment against it by paying a total of $11,787.87.

On March 13, 1975, Dillingham moved for an order that it was not barred from asserting a cross-claim for indemnification against Woods. On December 1, 1975, the court filed an order as follows:

1. The cause of action alleged in Plaintiff Quality Sheet Metal's Complaint is separate and different from the cause of action alleged in the Crossclaim of Defendant Woodson K. Woods, III, upon which default Judgment has been previously entered;

2. The said causes of action being separate and different, the Default Judgment entered on the Crossclaim of Defendant Woods has no res Judicata effect against Defendant Dillingham Brothers, Ltd. insofar as the cause of action alleged in the Complaint of Plaintiff is concerned;

3. The said Default Judgment on the Crossclaim of Defendant Woods likewise has no collateral estoppel effect against Defendant Dillingham Brothers, Ltd. insofar as the cause of action alleged in the Complaint of Plaintiff is concerned;

4. The Default Judgment entered on the Crossclaim of Defendant Woods having no collateral estoppel effect, none of the allegations of the Crossclaim of Defendant Woods constitutes evidence against Defendant Dillingham Brothers, Ltd. insofar as the Complaint of Plaintiff is concerned;

\* \* \* \* \*

Following a bench trial, Quality dismissed with prejudice its claim against Woods, and the court entered two separate findings and conclusions, one concerning Quality's claim against Dillingham and the other concerning Dillingham's cross-claim against Woods.

With respect to Quality's claim against Dillingham, the court entered the following conclusions of law:

1. That the Plaintiff [Quality] contracted with Dillingham during 1968 for repairs to the Woods residence in Paauilo, and performed the repairs during latter 1968 and early 1969.

2. That $8,202.09 is a fair and reasonable charge for the labor performed and materials supplied by Plaintiff [Quality] for and on behalf of and at the request of Dillingham on the Woods residence at Paauilo.

With respect to Dillingham's cross-claim against Woods, the court entered the following conclusions of law:

1. That Defendant DILLINGHAM had no legal obligation to repair the roof addition of Defendant WOODS.

2. That Defendant DILLINGHAM's employee, THOMAS SOGA, in contacting Plaintiff [Quality] regarding the repairing of the roof addition of Defendant WOODS, was acting as agent for Defendant WOODS.

3. That Defendant DILLINGHAM is entitled to be indemnified by Defendant WOODS in the amount of Plaintiff's [Quality's] Judgment, to wit, $12,061.00.

Woods and Dillingham appealed the judgment in favor of Quality against Dillingham. Woods appealed the judgment in favor of Dillingham against it.

## DILLINGHAM v. WOODS

It is settled law in Hawaii that the judgment of a court of competent jurisdiction is a bar to a new action in any court between the same parties or their privies concerning the same subject matter, and precludes the relitigation, not only of the issues which were actually litigated in the first action, but also of all grounds of claim and defense which might have been properly litigated in the first action but were not litigated or decided. *Morneau v. Stark Enterprises Ltd.,* 56 Haw. 420, 539 P.2d 472 (1975); 1B MOORE'S FEDERAL PRACTICE ¶ 0.405[1] at 621; ¶ 0.410[1], [2] at 1151-1184 (2d. ed. 1980). This is true even if the judgment was obtained by default. *Id.* ¶ 0.409[4] at 1024.

In the lower court, Dillingham successfully argued that the Woods v. Dillingham cause of action was so different from the Dillingham v. Woods cause of action that the latter was not barred by the former. We disagree.

This case began when Quality sued Dillingham and Woods for the reasonable value of its work in repairing the faulty roof. Woods cross-claimed against Dillingham to hold Dillingham liable for damages relating to the faulty roof. The fact that he prayed for a new roof rather than the repair of the faulty roof is of no consequence. The subject matter of this case was the repaired but still faulty roof. The time for Dillingham to assert its defenses to Woods' cross-claim was prior to the default judgment. It cannot now assert a claim against Woods which would, in effect, reverse Woods' default judgment against it.

## QUALITY v. DILLINGHAM

In the Quality v. Dillingham portion of the case, the court concluded that Quality "contracted with Dillingham for repairs to the Woods residence" and did the work "for and on behalf of and at the request of Dillingham." In the Dillingham v. Woods portion of the case, the court concluded that when Mr. Soga got Quality to work on the Woods' roof he "was acting as agent for Defendant Woods."

Dillingham did not cite the apparent conflict in the conclusions as a point on appeal, and we will, therefore, not concern ourselves with it. *State v. Kahua Ranch,* 47 Haw. 466, 390 P.2d 737 (1964).

Besides, it is possible that Mr. Soga was a double agent acting for Dillingham and for Woods.

The issue, therefore, is whether the court's finding that Quality contracted with and did the work for Dillingham is clearly erroneous. Rule 52, HRCP (1954, as amended).

The record contains evidence that Mr. Soga, the manager of Dillingham's contractor's supply division, contacted Mr. Kawakami, president of Quality, to ask for his help in solving Mr. Woods' leaky roof problems; that at Soga's request, Mr. Kawakami traveled from Oahu to Hawaii to inspect the roof; that Mr. Kawakami inspected the roof with Mr. Woods and Mr. Yanagihara, assistant of Mr. Soga; that on the day of the inspection, Mr. Kawakami pointed out the problem but told Mr. Woods that Quality would not do the job because it did not want to be involved in repairing substandard work; that Quality did not charge anybody for Mr. Kawakami's trip to Hawaii and back; that Mr. Kawakami made a report outlining the necessary repairs and sent it to Mr. Soga; that thereafter Mr. Woods asked Mr. Kawakami to do the job, and he declined; that within a day or so, Mr. Soga telephoned Mr. Kawakami and pleaded with him to do the job so that Mr. Soga could get Mr. Woods off of his back; and that Mr. Kawakami agreed to do the job for Mr. Soga.

Dillingham points out that to create a binding contract there must be a mutual assent or a meeting of the minds, *Earl M. Jorgensen Co. v. Mark Constr. Inc.*, 56 Haw. 466, 540 P.2d 978. In Dillingham's view, the most it did was to invite Quality to negotiate a contract with Woods.

We agree with the quoted law, but not its application. The trial court first had to decide whether Mr. Soga asked Quality to do the work or whether he merely asked Quality to say "yes" to Woods' request that it do the work. The court decided that Mr. Soga asked Quality to do the work. Then the court had to decide whether Mr. Soga was acting for himself, for Dillingham, for Mr. Woods, for any combination, or for all. It decided that Mr. Soga was acting for Dillingham and Woods. On the record, such a finding is not clearly erroneous.

We affirm the judgment in favor of Quality against Dillingham. We reverse the judgment in favor of Dillingham against Woods and order judgment in favor of Woods.

*William S. Chillingworth (Roy K. Nakamoto* with him on the briefs) for defendant-appellant, cross-appellee Dillingham.

*James P. Wohl* for defendant-appellee, cross-appellant Woods.

*Bruce M. Clark* for plaintiff-appellee Quality Sheet.