356 B.R. 286 (2006)
In re Arthur H. McMAHON, Jr., Debtor.
Colorado West Transportation Co., Inc., Plaintiff,
v.
Arthur H. McMahon, Jr., Defendant.
Bankruptcy No. 04-77426-PWB, Adversary No. 05-6027-PWB.
United States Bankruptcy Court, N.D. Georgia, Atlanta Division.
November 29, 2006.
*287 *288 Gus H. Small, Kelly Serene Scarbrough, Cohen Pollock Merlin Axelrod & Small, Atlanta, GA, for Colorado West Transportation Co., Inc.
Mathew A. Schuh, Morris, Schneider & Prior, LLC, Atlanta, GA, for Arthur H. McMahon, Jr.

ORDER
PAUL W. BONAPFEL, Bankruptcy Judge.
The Plaintiff obtained a default judgment against the chapter 7 Debtor (Defendant herein) in a Colorado state court on a fraud claim because the Debtor abandoned defense of the litigation after he lost preliminary dispositive motions. The Plaintiff seeks a determination that the debt is excepted from discharge under 11 U.S.C. § 523(a)(2)(A) due to the Debtor's alleged fraud. (For convenience, the Court uses the term "fraud" to encompass "false pretenses, false representations, and actual fraud" as those words are used in § 523(a)(2)(A).)
At the trial in this Court, the Plaintiff moved for entry of judgment as a matter of law on the ground that, under the doctrine of issue preclusion (sometimes referred to as collateral estoppel), the default judgment established Debtor's fraud for purposes of determining the debt's nondischargeability. FED.R.CIV.P. 52(c), applicable under FED. R. BANKR.P. 7052. Reserving ruling on this issue, the Court heard evidence on the merits and determined that the Plaintiff did not prove two of the elements required to establish the fraud exception. Specifically, the Plaintiff did not prove that any representation made by the Debtor was false or that the Plaintiff justifiably relied on any representation. If issue preclusion is required, however, the default judgment prevents the Debtor from litigating these issues, and the Court must enter judgment that the debt is nondischargeable.
A default judgment ordinarily does not have issue preclusive effect in a federal *289 court because the issues are not actually litigated. E.g. Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush), 62 F.3d 1319, 1323 (11th Cir.1995) (citing cases). The federal rule is thus consistent with the approach of § 27 of the Restatement (Second) of Judgments (1982) [hereinafter "Restatement (Second)"].[1]See generally Christopher Klein, Lawrence Ponoroff, and Sarah Borrey, Principles of Preclusion and Estoppel in Bankruptcy Cases, 79 AMER. BANKR. L.J. 839, 842-44 (2005) [hereinafter "Principles of Preclusion"].
The Plaintiff contends, however, that a default judgment has issue preclusive effect under Colorado law and that the full faith and credit statute, 28 U.S.C. § 1738, requires its application in this litigation. After setting out the facts relating to the Colorado lawsuit,[2] this Order considers these issues. The Court concludes that Colorado law does not require issue preclusion in this proceeding and that, even if it does, the full faith and credit statute does not require a bankruptcy court to give issue preclusive effect to a state court default judgment.

I. FACTS
In July 1996, the Plaintiff sued the Debtor in a Colorado court seeking unspecified damages based on fraud arising out of the Plaintiff's purchase in 1994 of the assets of Telluride Mountain Investments, Inc. ("TMI"), a corporation controlled by the Debtor. The complaint also asserted a claim for adjustments to the purchase price based solely on the contract in the liquidated amount of $24,839. (PX-1(A)).
The Debtor moved to dismiss for lack of service and jurisdiction (PX-1(E)), but withdrew the motion (PX-1(I), (J)). Instead of filing an answer, he moved to dismiss and/or for summary judgment, seeking dismissal of the complaint for failure to join TMI as an indispensable party, for lack of specificity in pleading fraud, and because certain contractual provisions barred the claims (PX-1(K)).
Because of the existence of disputed material facts, the Colorado court refused to dismiss (PX-D) and set a status conference for June 26, 1997. (PX-1, docket sheet). After the Debtor's lawyers withdrew because the Debtor could not pay them (PX-1(O)), the court rescheduled the status conference for July 23. The court's minute order stated in pertinent part, "The [Debtor] will be expected to participate in all future [hearings] and should [he] fail to do so [he] may suffer default with an entry of judgment against [him]." (PX-1, docket sheet; next to last page of PX-1(O)).
The Debtor did not attend the status conference (PX-1, docket sheet; last page of PX-1(O)), and the Plaintiff moved for default judgment on July 30 (PX-A). Attached *290 to the motion is an affidavit of its principal, Sid Brotman, that states the basis for the Plaintiffs damages on the fraud claim. According to the affidavit, the Debtor made false representations that overstated TMI's historical income. Because Mr. Brotman based the purchase price on a multiple of income, the affidavit concludes, the Plaintiff paid $375,000 more than it would have paid based on TMI's true income. The affidavit also requested damages on the contract claim in the liquidated amount of $24,829.
Although the notice to the Debtor of the filing of the motion stated that he had three days from the date of service on July 30 to respond (PX-B), the trial court entered default judgment two days later, on August 1 (PX-Q). The default judgment recites that the Debtor had failed to appear at the status conference and that he was indebted to the Plaintiff in the amount of $399,829, plus interest. The judgment made no finding that the Debtor had engaged in fraud.
The judgment did not specify how much was awarded on each of the two claims. Nevertheless, it is clear that the total judgment amount of $399,829 is the sum of the damages of $24,829 on the contract claim and $375,000, the amount the affidavit claims as damages due to fraud. It is, therefore, arithmetically clear that the default judgment awarded $375,000 on the fraud claim.
Some five years later, the Debtor moved to set aside the default judgment on the grounds that it had been entered without three days' prior notice as Colorado procedure requires and that he had meritorious defenses (PX-1(S)). On November 5, 2002, the court denied the motion, concluding that the failure to give proper notice was not jurisdictional and that the Debtor had not sought relief within a reasonable time as Colorado law requires (PX-E).
The Debtor filed his chapter bankruptcy case on October 21, 2004. The Plaintiff seeks a determination that the Debtor's liability under the default judgment is excepted from discharge under 11 U.S.C. § 523(a)(2)(A) due to fraud.

II. DISCUSSION
This Court determined after trial that the Plaintiff had failed to prove all of the elements of fraud that would except its judgment from discharge under § 523(a)(2)(A). The Plaintiff, however, contends that it is entitled to a determination that the debt is nondischargeable as a matter of law because the default judgment conclusively establishes that the Debtor is liable for fraud, the same issue that controls the exception from discharge.
A prior judgment may have preclusive effect in later litigation under two doctrines, traditionally referred to as the doctrines of res judicata and collateral estoppel. Modern terminology, following the approach of the Restatement (Second), replaces the term "res judicata" with "claim preclusion" and the term "collateral estoppel" with "issue preclusion." The modern terms are more analytically helpful and contribute to greater clarity of thought. See Principles of Preclusion at 847, citing 18 CHARLES ALAN WRIGHT, ARTHUR R. MILER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4402 (2d ed.2003). The Supreme Courts of the United States and of Colorado have adopted this approach. E.g., New Hampshire v. Maine, 532 U.S. 742, 748-49, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001); Argus Real Estate, Inc. v. E-470 Public Highway Auth., 109 P.3d 604 (Colo.2005).
The doctrine of claim preclusion prevents the relitigation of a claim that the prior judgment adjudicated. This principle prevents relitigation of a claim, *291 broadly defined under a transactional test that includes matters that have been litigated and matters arising out of the same transaction that could have been raised in the original litigation. See Principles of Preclusion at 847. The Supreme Court has held that claim preclusion does not apply in dischargeability litigation. Brown v. Felsen, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).
The doctrine of issue preclusion prevents the relitigation of any issue that was necessarily adjudicated in rendering the prior judgment. The Supreme Court has recognized that issue preclusion applies in dischargeability litigation. Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).
The Plaintiff invokes issue preclusion. The Plaintiff correctly posits that fraudulent conduct under Colorado law is the same type of conduct that renders the liability nondischargeable under 11 U.S.C. § 523(a)(2)(A). See, e.g., Evans v. Dunston (In re Dunston), 146 B.R. 269 (D.Colo.1992); Pacific Energy and Minerals, Ltd. v. Austin (In re Austin), 93 B.R. 723 (Bankr.D.Colo.1988). Because the judgment resolved the fraud issue, the Plaintiff concludes, the Debtor cannot relitigate it in this proceeding, and the Plaintiff is entitled to judgment as a matter of law that the liability established by the judgment is excepted from discharge.
A default judgment ordinarily does not have issue preclusive effect in a federal court because the issues are not actually litigated. E.g. Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush), 62 F.3d 1319, 1323 (11th Cir.1995) (citing cases). See also Franks v. Thomason (In re Franks), 4 B.R. 814, 821-22 (N.D.Ga.1980) (Default judgment entered in a proceeding in which the debtor initially appeared but later failed to appear at trial does not have issue preclusive effect because the "actually litigated" requirement is not met.).
The Plaintiff asserts that federal issue preclusion principles do not apply to its state court judgment. Rather, the Plaintiff insists, Colorado law gives issue preclusive effect to a default judgment entered by a Colorado court, and the Court in this proceeding must do likewise under the full faith and credit statute.
The full faith and credit statute, 28 U.S.C. § 1738, provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." Section 1738 thus requires a federal court in later litigation involving a federal statute to give the same preclusive effect to a prior state court judgment that the judgment would receive under state law unless later federal legislation contains an express or implied repeal of the statute. E.g., Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380-81, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985).
Whether the Colorado default judgment has issue preclusive effect in this dischargeability litigation, therefore, requires consideration of two questions. First, does Colorado law give it issue preclusive effect? If not, there is no § 1738 issue; if so, then the second question is whether there is an express or implied repeal of § 1738 in bankruptcy legislation dealing with dischargeability issues. See id. at 381-83, 105 S.Ct. 1327.
A. The Issue Preclusive Effect of a Default Judgment Under Colorado Law
Two decisions of the Colorado Court of Appeals and a Seventh Circuit opinion applying Colorado law in a diversity action indicate that Colorado law gives issue preclusive effect to a default judgment *292 But decisions of district and bankruptcy courts in Colorado in the context of dischargeability litigation indicate that the availability of issue preclusion in a default situation under Colorado law depends on the extent to which the debtor participated in the prior litigation. Based on the following analysis of the cases in light of other Colorado opinions dealing m"h other issue preclusion questions, the Court concludes that the federal decisions state the proper rule for issue preclusion and that issue preclusion does not apply here.
1. Decisions of the Colorado Court of Appeals and Seventh Circuit.
In Ortega v. Board of County Commissioners, 683 P.2d 819 (Colo.Ct.App.1984), the Colorado Court of Appeals held that a default judgment in an earlier action barred a later action under the doctrine of collateral estoppel. There, the plaintiff sought the issuance of a treasurer's deed to real property based on his ownership of a tax certificate and related damages for failure to issue it. In a prior quiet title action, judgment by default had been entered against the plaintiff (defendant in the prior action) that declared he had no interest in the property and that directed the cancellation of the tax certificate. The plaintiff had appeared (as a defendant) in the prior action and unsuccessfully moved to dismiss it but did not defend further.
The court determined that the primary issue in the quiet title action had been the validity or invalidity of the tax certificate, that the default judgment was a final judgment, and that it precluded relitigation of issues actually litigated in the prior action as well as "all grounds of claim and defense which might have been properly litigated in the first action but were not litigated or decided." Id. at 821 (quoting Quality Sheet Metal Co., Ltd. v. Woods, 2 Haw.App. 160, 627 P.2d 1128 (1981)). Because the plaintiff had appeared in the first action and the trial court had considered and denied his motion to dismiss, the Ortega court determined that he had had a full and fair opportunity to litigate the issue. Thus, the court concluded that the default judgment operated to bar relitigation. Ortega, 683 P.2d at 821.
The other case from the Colorado Court of Appeals is Aspen Plaza Co. v. Garcia, 691 P.2d 763 (Colo.Ct.App.1984). There, the court stated, "Judgment by default is res judicata as to those matters pled and determined." Id. at 764. This ruling did not, however, preclude the party from litigating the claim brought in the second case because it involved different issues.
In Stephan v. Rocky Mountain Chocolate Factory, Inc., 136 F.3d 1134, 1138 (7th Cir.1998), the Seventh Circuit read Ortega and Aspen Plaza as establishing that, under Colorado law, "issue preclusion applies to the issues subsumed within a default judgment." Stephan, 136 F.3d at 1138. Moreover, the Seventh Circuit concluded, "the Colorado Court of Appeals adheres to this rule regardless of the extent of the defaulting party's participation in the earlier lawsuit." Id.
If Ortega and Stephan govern this matter, the Plaintiffs default judgment would have preclusive effect in this litigation. The absence of actual litigation of the issue of fraud does not matter, and the Debtor's appearance and litigation of preliminary matters meets the standard of these cases of a full and fair opportunity to litigate the issue in the prior lawsuit.
2. Decisions of District and Bankruptcy Courts in Colorado.
Federal district and bankruptcy courts in Colorado have interpreted Colorado issue preclusion law differently in the specific context of dischargeability litigation. In Evans v. Dunston (In re Dunston), 146 *293 B.R. 269 (D.Colo.1992), the district court affirmed the bankruptcy court's refusal to give issue preclusive effect to a default judgment against a debtor who had not appeared in the state litigation. The court cited Ortega for the general Colorado rule that a default judgment has preclusive effect. Nevertheless, the district court continued, "[T]his principle still contains the caveat that the issues precluded must have been actually litigated." Id. at 277. The court observed that courts had given preclusive effect to default judgments in cases in which the debtor had completed discovery, presented all his arguments and issues for trial, and failed to appear at trial, and in which the issues had been actually litigated through a full trial process. Distinguishing those cases, the court ruled that issue preclusion was not proper because the bankruptcy court could not conclude that fraud issues had been fully presented, defended, and litigated in the state court. Id. at 278.
Similarly, a Colorado bankruptcy court declined to give preclusive effect to a default judgment in a state court proceeding in which the debtor had not appeared in Hoyt v. Mathias (In, re Mathias), 2001 WL 936345 (Bankr.D.Colo.2001). The court ruled that the issues had not been "actually litigated" by the default judgment where "there was no participation in the state court proceeding by the [debtor], no discovery conducted, and no evidence of `fraud' presented." Id. at *3.
In contrast, the same bankruptcy court had earlier given issue preclusive effect to a default judgment in Pacific Energy and Minerals, Ltd. v. Austin (In re Austin), 93 B.R. 723 (Bankr.D.Colo.1988). In Austin, the creditor had obtained relief from the stay after the bankruptcy filing to litigate its pending fraud action in the state court. In the state court proceeding, the parties over the course of almost three years had concluded all pleadings, discovery, pre-trial procedures, and trial preparation, and the matter was scheduled for trial on three occasions. When the trial finally commenced, the debtor's counsel appeared and announced that the debtor did not desire, or was not able, to proceed to litigate the matter and consented to entry of a default judgment.
The Austin court recognized that "[n]ot all default judgments will have, nor should they have, preclusive effect on dischargeability issues in Bankruptcy Court." Id. at 728. Nevertheless, three things compelled the court to rule that the default judgment was preclusive: the clear and certain findings of the state court judge and pleadings of the creditor respecting the elements on which nondischargeability was based; the existence of three separate trial dates that provided the debtor a full and fair opportunity to try the issues and the debtor's decision not to go to trial; and the bankruptcy court's earlier action in deliberately excusing itself as the forum for the litigation and its direction to the parties to go to the state court for trial and final resolution of the issues.
Under the interpretation of Colorado law in these federal decisions, a default judgment does not necessarily have issue preclusive effect. Whether it does depends on the extent of the debtor's participation in the prior proceeding. These cases establish rules for two situations: (1) A default judgment has no preclusive effect when a debtor does not defend at all; and (2) A default judgment has issue preclusive effect when a debtor fully participates in pretrial proceedings and the issues are fully developed on the merits through the pleadings and discovery.
Neither situation occurred here. The Debtor appeared and asserted preliminary, dispositive defenses, thus taking him out of the first type of situation presented *294 in Dunston and Mathias. But when the court rejected these defenses, the Debtor promptly abandoned the litigation. Thus, his participation in the proceeding does not come close to the active conduct of litigation that occurred in the second set of circumstances presented in Austin. Indeed, none of the circumstances critical to issue preclusion in Austin are present here. No discovery was conducted, no answer was interposed, no pre-trial procedures took place beyond resolution of the preliminary motions and the status conference that the Debtor failed to attend, no trial was ever scheduled or conducted. Significantly, the debtor engaged in no dilatory or improper conduct, such as the failure to engage in discovery. Thus, the Debtor did nothing to frustrate or delay the judicial proceedings; his failure to defend paved the way for the prompt entry of judgment against him.
The Debtor's conduct in the state court amounts to a failure to defend on the merits that, for purposes of issue preclusion law, is substantively equivalent to not defending at all. The principles of Dunston and Mathias that require actual litigation for application of issue preclusion under Colorado law do not permit it based on the record here.
3. Analysis of conflicting authorities and consideration of other Colorado precedent.
The interpretation of Colorado law by the federal courts in Colorado conflicts with the Seventh Circuit's determination in Stephan v. Rocky Mountain Chocolate Factory, Inc., 136 F.3d 1134 (7th Cir.1998), that a Colorado default judgment has issue preclusive effect under Ortega v. Board of County Commissioners, 683 P.2d 819 (Colo.Ct.App.1984) and Aspen Plaza Co. v. Garcia, 691 P.2d 763 (Colo.Ct.App.1984), regardless of whether the party participated or even appeared in the prior action. The Court must determine which interpretation properly applies here.
Although the Ortega court discussed the issue before it in terms of collateral estoppel, now referred to as issue preclusion, its language and reasoning reflect application of res judicata, now referred to as claim preclusion. Significantly, its test for application of what the court said was collateral estoppel, id. at 821, did not include a requirement of actual litigation  an essential element for issue preclusion but not claim preclusion. E.g., Bebo Constr. Co. v. Mattox & O'Brien, P.C., 990 P.2d 78, 85 (Colo. 1999). Further, the Ortega court noted that the default judgment would bar not only any issues actually litigated, but also "all grounds of claim and defense which might have been properly litigated in the first action but were not litigated or decided." Ortega, 683 P.2d at 821. As the Colorado Supreme Court observed in Bebo Construction, 990 P.2d at 85, claim preclusion prevents relitigation of such issues, but issue preclusion does not.
A further indication that the Ortega court applied res judicata principles is its reliance on Quality Sheet Metal Co. v. Woods, 2 Haw.App. 160, 627 P.2d 1128 (1981). Quality Sheet Metal applied the res judicata doctrine to the default judgment before it.
Finally, the procedural posture of Ortega indicates that the properly applicable doctrine was claim preclusion. The first, quiet title action asserted claims against the plaintiff (then the defendant) that the plaintiff had no interest in the subject property, that he should not receive a treasurer's deed to it, and that his tax certificate should be cancelled. The requested relief was granted. The second action sought issuance of a treasurer's deed and damages because it had not been granted, the same claims necessarily involved in the *295 quiet title action. Ortega thus presents a classic case for the application of claim preclusion.
Application of claim preclusion to bar relitigation of claims that a default judgment resolves is settled law, but that is wholly different from applying issue preclusion to a different claim when the issues necessary to determination of the later claim were not actually litigated. Properly read, Ortega does not control the issue preclusion question presented here.
The foregoing analysis of Ortega casts doubt on the Seventh Circuit's ruling in Stephan v. Rocky Mountain Chocolate Factory, Inc., 136 F.3d 1134 (7th Cir.1998). The Stephan court's issue preclusion analysis relied on statements in Ortega and Aspen Plaza Co. v. Garcia, 691 P.2d 763 (Colo.Ct.App.1984), and Ortega's citation of Quality Sheet Metal to support its conclusion. But Aspen Plaza and Quality Sheet Metal on their face are claim preclusion cases (expressly applying res judicata); properly read, Ortega is a claim preclusion case as well. Thus, the Seventh Circuit in Stephan decided an issue preclusion dispute by reference to cases involving claim preclusion principles. Like Ortega, therefore, Stephan is not conclusive authority on the application of issue preclusion because it relies on claim preclusion principles.
Colorado cases dealing with other issue preclusion questions in other contexts, on the other hand, support the rulings of the federal courts in Colorado.
In Bennett College v. United Bank of Denver, 799 P.2d 364, 368 (Colo.1990), the Supreme Court of Colorado, in applying issue preclusion based on a consent judgment on the facts before it, observed that issue preclusion does not necessarily arise from a settlement between the parties, citing Restatement (Second) § 27. The significance of the Bennett College court's reference to § 27 is that this section adopts the principle that issue preclusion does not apply in the case of a default judgment because none of the issues is actually litigated. With regard to the "actually litigated" requirement, comment e to § 27 explains, "In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, the rule of this Section does not apply with respect to any issue in a subsequent action."
The Seventh Circuit in Stephan was not persuaded that Bennett College provided a basis for determining that the Colorado courts would apply the rule of Restatement (Second) § 27 in the case before it, and Bennett College did not refer to comment e. Nevertheless, Bennett College is consistent with the Colorado federal courts' application of Colorado issue preclusion law.
More significant, issue preclusion analyses in other Colorado cases decided after Stephan indicate that the Colorado courts follow the approach of Restatement (Second) § 27. Bebo Constr. Co. v. Mattox & O'Brien, P.C., 990 P.2d 78, 84-85 (Colo. 1999); Sunny Acres Villa, Inc. v. Cooper, 25 P.3d 44 (Colo.2001).
In Bebo Construction, the Colorado Supreme Court discussed the "actually litigated" and "full and fair opportunity to litigate" elements of collateral estoppel. Explaining the "actually litigated" component, the court stated, 990 P.2d at 86 (emphasis added):
To be actually litigated the issue must be raised by a party through an appropriate pleading or tried with the consent of the parties, it must be submitted to the prior tribunal for determination, and it must be determined by that tribunal.

Significantly, the court in its analysis repeatedly cited Restatement (Second) *296 § 27 and specifically referred to comment e. Id. at 85.
With regard to the "full and fair opportunity to litigate" element, the court commented, id. at 87:
While this court has not extensively addressed the scope of this element, we have recognized that factors determinative of whether an individual received a full and fair opportunity to litigate include: whether the remedies and procedures of the first proceeding are substantially different from the proceeding in which collateral estoppel is asserted; whether the party in privity with the party against whom collateral estoppel is sought had sufficient incentive to litigate vigorously; and the extent to which the issues are identical.
These Colorado Supreme Court cases did not involve default judgments and, as such, do not directly address the issue presented here. Nevertheless, their reliance on the principles of Restatement (Second) § 27 to guide their analysis and their explanation of the requirements of actual litigation and full and fair opportunity to defend (two separate elements, see Bebo Construction, 990 P.2d at 88-89 (concurring opinion)) indicate that the Colorado Supreme Court would follow its principles and, in particular, would apply the rule of § 27 that issue preclusion does not apply to a default judgment because issues are not actually litigated. Of particular importance is the recognition in Bebo Construction that issue preclusion applies only if the issue is "actually determined by the adjudicatory body." Id. at 85.
The Court concludes that, under Colorado law, issue preclusion does not apply when a default judgment results from a debtor's abandonment of litigation prior to the filing of an answer, the commencement of discovery, and development of issues on the merits, rather than from abusive litigation tactics, and the trial court did not actually adjudicate any issues.[3] The decisions of the federal courts in Colorado in Austin, Dunston, and Mathias are consistent with this interpretation and application of Colorado law. The Colorado Supreme Court's explanation of issue preclusion law confirms the analysis of those decisions and this Court's conclusion. For reasons set forth above (§ A(2)), the application of Colorado law here does not permit, much less require, the Court to give issue preclusive effect to the Plaintiffs default judgment.
B. Applicability of the Full Faith and Credit Statute
If, contrary to the foregoing ruling, Colorado law would give issue preclusive effect to the default judgment, the full faith and credit statute, 28 U.S.C. § 1738, requires this Court to do likewise unless there is an express or implied exception to that statute in the bankruptcy laws. Marrese v. American Academy of Orthopaedic *297 Surgeons, 470 U.S. 373, 380-81, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985).
The Bankruptcy Code does not expressly repeal § 1738 in dischargeability litigation, but it vests exclusive authority in the bankruptcy courts to make certain types of dischargeability determinations, including the exception based on fraud. 11 U.S.C. § 523(c). Whether § 523(c) establishes an implicit repeal of § 1738 with regard to the issue preclusive effect of a state court default judgment in dischargeability litigation within its scope depends on Congressional intent. Marrese, 470 U.S. at 386, 105 S.Ct. 1327. As explained below, the Supreme Court's rulings in Brown v. Felsen, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), and Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), do not consider this issue, and it is an open question in the Eleventh Circuit.
As further explained below, the clear Congressional policy of § 523(c) is to insure the proper determination by the bankruptcy courts of exceptions to discharge subject to it in order to protect the "fresh start" that the Bankruptcy Code promises the honest but unfortunate debtor. Because a proper determination of such issues requires that a debtor who has not committed fraud or other misconduct specified in § 523(c) be able to defend on the merits and thus discharge an honest obligation, even if a previous failure to defend in state court litigation would preclude a defense as a matter of state procedural law, the Court concludes that § 523(c) implicitly repeals § 1738 with regard to the issue preclusive effect of a default judgment under state law.
1. Cases Decided by the Supreme Court, the Eleventh Circuit, and Courts in This District
The Supreme Court in Brown v. Felsen, 442 U.S. 127, 139 & n. 10, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), held that claim preclusion does not apply to a prior state court judgment in dischargeability litigation, but noted that issue preclusion might. In Grogan v. Garner, 498 U.S. 279, 285 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), the Court unequivocally stated that issue preclusion principles apply in dischargeability litigation. But neither case discusses whether federal or state law governs the invocation of issue preclusion, and neither mentions § 1738. (Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 386, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985), however, appears to suggest that Brown v. Felsen is based on a finding of Congressional intent that a state court judgment not have claim preclusive effect in dischargeability litigation.)
The issue presented in Grogan v. Garner was whether a creditor had to prove fraud to establish an exception from discharge by a preponderance of the evidence or by clear and convincing evidence. The Supreme Court held that the proper standard was preponderance of the evidence and that, therefore, the bankruptcy court could properly give issue preclusive effect to a prior state court judgment that had found fraud based on a preponderance of the evidence.
In introducing the burden of proof issue and its determinative effect in the litigation before it, the Court in Grogan v. Garner stated the following with regard to issue preclusion, which it discussed in terms of collateral estoppel, 498 U.S. at 284-85, 111 S.Ct. 654 (footnote omitted):
In this case, a creditor who reduced his fraud claim to a valid and final judgment in a jurisdiction that requires proof of fraud by a preponderance of the evidence seeks to minimize additional litigation by invoking collateral estoppel. If the preponderance standard also governs *298 the question of nondischargeability, a bankruptcy court could properly give collateral estoppel effect to those elements of the claim that are identical to the elements required for discharge and which were actually litigated and determined in the prior action. See Restatement (Second) § 27.
In a footnote, the Court observed, "Virtually every court of appeals has concluded that collateral estoppel is applicable in discharge exception proceedings," and expressly stated, "[C]ollateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)." 498 U.S. at 284 n. 11, 111 S.Ct, 654.
Although the Court in Grogan v. Garner thus made it clear that issue preclusion principles apply in dischargeability litigation, the Court did not consider which principles of issue preclusion apply. It did not matter in the case before it because the parties had actually litigated the fraud issue in the prior state action. But it does matter if the state's law requires that a default judgment have issue preclusive effect, contrary to the rule that Restatement (Second) § 27 adopts and that federal courts follow. E.g., Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush), 62 F.3d 1319, 1323 (11th Cir.1995) (citing cases).
The Supreme Court's statement of issue preclusion principles in Grogan v. Garner indicates that it had the Restatement (Second) principles and the federal rule in mind. The issue had been litigated in the case before it, and the Court's language expressly refers to the requirement that the issue be actually litigated, the position adopted by Restatement (Second) § 27 that the Court cited. Every case cited in footnote 11 to show that the courts of appeals had held that collateral estoppel applied in dischargeability litigation applied federal principles.[4] Moreover, the Court's statement that the bankruptcy court could give issue preclusive effect to a prior state judgment appears to acknowledge the discretionary aspect of issue preclusion that Parklane Hosiery Co. v. Shore, 439 U.S. 322, 331, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), recognized, and that is implicit in the principle that appellate review of the availability of issue preclusion in a federal court is de novo whereas the trial court's determination to apply the doctrine is subject to review for abuse of discretion. E.g., Dias v. Elique, 436 F.3d 1125, 1128 (9th Cir.2006); Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush), 62 F.3d 1319, 1325 n. 8 (11th Cir.1995). See generally Principles of Preclusion, at 846 n. 22 & 23. Thus, Grogan v. Garner does not answer the question of whether a bankruptcy court must apply state issue preclusion law to a default judgment under the full faith and credit statute.
The Eleventh Circuit has applied collateral estoppel in dischargeability litigation to a state court judgment entered after trial. St. Laurent V. Ambrose (In re St. Laurent), 991 F.2d 672, 675-76 (11th Cir. 1993). And it has permitted a bankruptcy court in its discretion to determine nondischargeability based on the issue preclusive effect of a federal default judgment entered as a sanction for discovery abuse "[w]here a party has substantially participated in an action in which he had a full and fair opportunity to defend on the merits, but subsequently chooses not to do so, *299 and even attempts to frustrate the effort to bring the action to judgment." Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush), 62 F.3d 1319, 1325 (11th Cir.1995). But the court in Bush expressly left open the question of whether a bankruptcy court must give issue preclusive effect in such litigation to a state court default judgment. Id. at 1323 n. 6.
District and bankruptcy court decisions in this District have given issue preclusive effect to default judgments rendered in a state court as a sanction for willful discovery abuse, Sterling Factors, Inc. v. Whelan (In re Whelan), 245 B.R. 698 (N.D.Ga. 2000), or entered several years after the bankruptcy court had lifted the stay to permit pending state court litigation to proceed (holding matters in the bankruptcy litigation in abeyance pending a final judgment in the state court) and the debtor eventually refused to participate in the proceeding after answering the complaint and participating in discovery. League v. Graham (In re Graham), 191 B.R. 489 (Bankr.N.D.Ga.1996). Although these cases recite the principle that the full faith and credit statute requires the application of state law to determine the issue preclusive effect of a state court judgment, they did not consider whether there is an exception to its application for a default judgment that is not the result of improper litigation tactics by the debtor.
2. Effect of § 523(c) on Application of § 1738 to Default Judgments
In the absence of controlling precedent, the Court considers whether Congress intended to except default judgments from the operation of § 1738 when § 523(c) of the Bankruptcy Code requires the bankruptcy court to determine dischargeability. As stated in Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 386, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985), the test for an exception "depend[s] on the particular federal statute as well as the nature of the claim or issue involved in the subsequent federal action. . . . [T]he primary consideration must be the intent of Congress."
Examination of Congressional intent underlying § 523(c) begins with discussion of its statutory predecessor, § 17 of the previous Bankruptcy Act, as amended in 1970. Prior to 1970, § 14 of the Bankruptcy Act provided for the bankruptcy court to enter the discharge of a debtor but left determination of the dischargeability of any particular debt under § 17 to the court in which a creditor sued, after bankruptcy, to assert its claim. In 1970, Congress amended § 17 to give bankruptcy courts jurisdiction to determine dischargeability questions in connection with the filing of the bankruptcy case and to require creditors to obtain a determination of nondischargeability of claims based on fraud and similar misconduct in the bankruptcy court. See Brown v. Felsen, 442 U.S. 127, 129-30, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). Congress included these provisions as § 523(c) in the comprehensive revision of the bankruptcy laws in 1978 that enacted the Bankruptcy Code.
In Brown v. Felsen, the Supreme Court explained the legislative purpose as follows, 442 U.S. at 135-36, 99 S.Ct. 2205:
The 1970 amendments eliminated postbankruptcy state-court collection suits as a means of resolving certain § 17 dischargeability questions. In those suits, creditors had taken advantage of debtors who were unable to retain counsel because bankruptcy had stripped them of their assets. Congress' primary purpose was to stop that abuse. A secondary purpose, however, was to take these § 17 claims away from state courts that seldom dealt with the federal bankruptcy laws and to give those *300 claims to the bankruptcy court so that it could develop expertise in handling them.
Noting legislative history describing the bankruptcy court's jurisdiction over these claims as "exclusive," the Court then stated, id. at 136, 99 S.Ct. 2205:
While Congress did not expressly confront the problem created by pre-bankruptcy state-court adjudications, it would be inconsistent with the philosophy of the 1970 amendments to adopt a policy of res judicata which takes these § 17 questions away from bankruptcy courts and forces them back into state courts.
The Court recognized that the case before it involved res judicata principles and not the "narrower principle of collateral estoppel." Id. at 139 n. 10, 99 S.Ct. 2205. In this regard, the Court stated, "If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17, then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court." Id. (emphasis added).
As Brown v. Felsen recognized, a fundamental policy of the bankruptcy law is to provide a "fresh start" to the "honest but unfortunate debtor." Id. at 128-29, 99 S.Ct. 2205 (quoting Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)). Proper determination of dischargeability issues is critical to this policy. Brown v. Felsen identified two Congressional purposes in enacting legislation providing for bankruptcy courts to have exclusive authority to decide certain dischargeability issues that directly relate to their proper determination: stopping creditor abuse arising because debtors could not defend lawsuits and having bankruptcy courts develop expertise in applying federal law. Thus, the overriding policy of § 523(c) and its predecessor is to effect a proper determination of dischargeability issues that, in turn, is critical to the "fresh start" policy that is a fundamental principle of bankruptcy law.
These policies and purpose 3 can be properly carried out if the bankruptcy court applies federal law to facts that are actually litigated in a state court. But they cannot possibly be accomplished if a bankruptcy court must accept determinations of fact that arise as a procedural matter due to the debtor's default in the prior proceeding. Application of issue preclusion to a default judgment results in an exception to discharge because the debtor failed to litigate an issue prior to bankruptcy, not because the debtor actually engaged in fraud or other specified misconduct. Such a consequence clearly contravenes the Congressional policy expressed in § 523(c) that the bankruptcy courts properly determine exceptions to discharge based on allegations of fraud or other misconduct within its scope. A proper determination cannot occur if an innocent debtor cannot defend because the failure to defend in a state court precludes it.
An illustration of the application of issue preclusion to a state court default judgment shows how the absence of an exception could routinely result in an erroneous determination of dischargeability and impair a debtor's fresh start. Credit card issuers may take the position that a debtor's failure to pay a credit card debt amounts to fraud because use of the card constituted a false representation of ability to pay or because the debtor incurred the debt without the intent to pay. Such allegations raise important factual issues that *301 govern dischargeability.[5] Creditors hoping to avoid such issues could simply include such additional allegations in complaints filed in state courts. An individual debtor often does not respond to such lawsuits, either because he knows he owes the money, because he cannot afford a lawyer, because his financial situation is so hopeless that the only way of dealing with the unpleasant reality of the lawsuit is to ignore it. If a creditor's default judgment in these circumstances has issue preclusive effect in dischargeability litigation, honest debtors who have done nothing wrong (beyond failing to defend the lawsuit) will not be able to discharge such debts. Such improper dischargeability determinations are precisely what Congress intended to prevent by vesting exclusive jurisdiction over certain exceptions to discharge in the bankruptcy courts.
To summarize, the Congressional policy in vesting exclusive authority in the bankruptcy courts to determine certain dischargeability issues under § 523(c) is to insure the proper determination of such issues that, in turn, is essential to a debtor's ability to obtain a "fresh start" that is a fundamental objective of the Bankruptcy Code. Imposing nondischargeability of a debt due to issue preclusion on account of a debtor's failure to litigate in a prior proceeding prevents the proper determination of dischargeability and thereby defeats a primary policy of the bankruptcy laws. Section 523(c), therefore, demonstrates a "countervailing statutory policy" of the type contemplated by Brown v. Felsen that establishes a Congressional intent to except default judgments in dischargeability litigation from the operation of § 1738.
Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), does not require a different conclusion. To be sure, the Supreme Court implicitly ruled and expressly stated that collateral estoppel principles apply in dischargeability litigation. But as shown above, the Court did not determine which principles apply, and its discussion of collateral estoppel principles incorporated the limitation that it applies only to "those elements of the claim that are identical to the elements required for discharge and which were actually litigated and determined in the prior action." Id. at 284, 111 S.Ct. 654 (emphasis added). This language, the citation of Restatement (Second) § 27 immediately following it, and the fact that the parties there had actually litigated the issues in the prior litigation indicate that the Supreme Court expected that the elements for application of collateral estoppel in dischargeability litigation included the "actually litigated" requirement and that issue preclusion, therefore, would not apply in the case of default judgments, in accordance with Restatement (Second) § 27 and existing federal law. Thus, Grogan v. Garner is thoroughly consistent with the principle that, in litigation of dischargeability issues subject to § 523(c), an exception for issue preclusion under § 1738 exists when issues have not been actually litigated.
*302 3. Availability of Federal Issue Preclusion Principles in Abusive Litigation Situations
The conclusion that state court default judgments are excepted from § 1738 in dischargeability litigation within § 523(c) does not mean that a bankruptcy court can never apply issue preclusion to a default judgment in dischargeability litigation. As the Eleventh Circuit determined in Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush), 62 F.3d 1319 (11th Cir.1995), a debtor's substantial participation in litigation over an extended period of time, during which he engages in dilatory and deliberately obstructive conduct that results in default as a discovery sanction, can satisfy the actual litigation requirement. Accord, e.g., FDIC v. Daily (In re Daily), 47 F.3d 365, 368-69 (9th Cir.1995). Although the decisions from this district, Sterling Factors, Inc. v. Whelan (In re Whelan), 245 B.R. 698 (N.D.Ga.2000), and League v. Graham (In re Graham), 191 B.R. 489 (Bankr.N.D.Ga.1996), do not discuss the issue in these terms, the same principles justify their applications of issue preclusion to default judgments in the abusive litigation situations before them. These principles inherent in the federal law of issue preclusion remain fully effective under the Supreme Court's recognition in Grogan v. Garner that issue preclusion principles apply in dischargeability litigation, even though § 1738 does not require issue preclusion in the case of a state court default judgment.
4. Discussion of Contrary Cases
The Courts of Appeals for the Sixth and Ninth Circuits have ruled that the full faith and credit statute requires a bankruptcy court in dischargeability litigation to give issue preclusive effect to a "true" default judgment, i.e., a default judgment entered because of the debtor's failure to appear and defend at all, if state law so requires. Bay Area Factors v. Calvert (In re Calvert), 105 F.3d 315 (6th Cir.1997); Gayden v. Nourbakhsh (In re Nourbakhsh), 67 F.3d 798 (9th Cir.1995).
In Nourbakhsh, the Ninth Circuit held that the Supreme Court's statement in Grogan v. Garner, 498 U.S. 279, 284-85, n. 10, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), that collateral estoppel applies in dischargeability litigation, "conclusively" answered the question of whether Congress intended to except nondischargeability litigation from § 1738 and applied that principle to a Florida default judgment. Nourbakhsh, 67 F.3d at 801. In Calvert, the Sixth Circuit, noting this statement in Grogan v. Garner and observing that Brown v. Felsen, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), only exempted claim preclusion from § 1738, concluded that neither the Bankruptcy Code nor its legislative history "reveal anything that would suggest that Congress intended to exclude default judgments obtained in state court from the applicability of the Full Faith and Credit Statute in dischargeability proceedings in bankruptcy court." Calvert, 105 F.3d at 320-21.
Unlike this Court, the Calvert court was not persuaded by the proposition that application of issue preclusion to a state court default judgment would require a debtor to defend a state court suit "to the hilt" to preserve the dischargeability of a debt even though no bankruptcy case is pending or contemplated and would enable a creditor to make a debt nondischargeable by reciting that it is based on fraud or some other ground of nondischargeability. Nor did the court think that such a result contravened bankruptcy policy favoring litigation of such questions in bankruptcy courts. The court stated, "[T]his argument presumes that we do not have a system of law which expects, and in fact *303 demands, that individuals sued respond to the suit and which subjects to liability those who do not. . . . The debtor is required to litigate the fraud issue when he litigates other issues in state court or he will be bound by the judgment despite the policy." Id. at 321.
This Court respectfully disagrees with the Nourbakhsh conclusion that Grogan v. Garner, which did not even mention § 1738, controls the issue here, and with the Calvert conclusion that the Congressional policies underlying enactment of § 523(c), as discussed above and recognized in Brown v. Felsen, do not. Like its predecessor, § 523(c) exists to insure the proper determination of dischargeability issues within its scope that is critical to the "fresh start" policy of the bankruptcy law. Proper determination of issues is impossible unless facts are actually litigated. A "countervailing statutory policy" under the principles of Brown v. Felsen thus exists that establishes an implied exception to the operation of § 1738 in the case of default judgments.
Of course it is true, as the Calvert court emphasized, that individuals have a responsibility to respond to legal proceedings and must accept the consequences when they fail to do so. Calvert, 105 F.3d at 321. It is certainly irresponsible for a debtor to fail to recognize the legal jeopardy that results from not defending a lawsuit. Nevertheless, such irresponsibility does not equate to fraud or the other types of misconduct that § 523(a) specifies as conduct that results in a debt being excepted from discharge. The debtor relief aspect of the bankruptcy law expressed in the "fresh start" policy is all about relieving debtors from the consequences of their honest prepetition conduct and mistakes, whether the mistakes are not defending a lawsuit or borrowing beyond the ability to pay. Clearly, a debtor who fails to defend a lawsuit is bound by a resulting default judgment as a determination of his liability. But such a mistake should not result in a determination of fraud absent actual litigation of the issue.
The Sixth Circuit in Calvert advanced additional considerations to support its ruling, based on its decision in In re Bursack, 65 F.3d 51 (6th Cir.1995). Bursack holds that collateral estoppel applies when the debtor has appeared and defended the suit in part but does not appear for trial. The Calvert court explained that the refusal to apply collateral estoppel when the debtor does nothing to defend would give a debtor contemplating bankruptcy an "unacceptable incentive" to "permit a default judgment to be entered to avoid a jury determination of fraud damages, or in hopes that, by postponing the time when the fraud issue will be tried, memories may fade and evidence may become unavailable." Calvert, 105 F.3d at 321. Although the court acknowledged the possibility that a debtor might not have an incentive to litigate because he was unable to pay a judgment, the court explained that such a situation existed whether a debtor defended a lawsuit in part or not at all. Because the court could find no sensible way to distinguish the two situations, and because collateral estoppel, under the Bursack ruling, applied in the partial defense scenario, the court determined that the same rule must apply when the debtor did not respond at all. Id. at 321-22.
But it is not necessary to apply issue preclusion to all default judgments to address these policy concerns. If the state court record shows abusive tactics such as those the Calvert court envisioned, a bankruptcy court may properly apply issue preclusion principles as permitted by Grogan v. Garner. Indeed, the Eleventh Circuit did precisely that in Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush), 62 F.3d *304 1319, 1324 (11th Cir.1995). ("[A]buse of the judicial process must not be rewarded by a blind application of the general rule denying collateral estoppel effect to a default judgment.").
Furthermore, a principled basis exists for determining whether a debtor's participation in prior litigation before entry of default judgment properly triggers issue preclusion. A debtor whose incomplete participation in a proceeding amounts to an abuse of the judicial process will face issue preclusion under federal issue preclusion principles. But a debtor who, without complicating or frustrating the litigation, initially defends but ultimately determines that he is unable to continue it is no more blameworthy than one who does not defend in the first instance. As the Sixth Circuit recognized, the two latter circumstances are indistinguishable. Calvert, 105 F.3d at 322. The bankruptcy policies discussed above require that a debtor be allowed to defend in both situations. Cf. Franks v. Thomason (In re Franks), 4 B.R. 814, 822 (N.D.Ga.1980) (Collateral estoppel does not apply to default judgment entered upon debtor's failure to appear for trial after answer and appearance because the "actually litigated" requirement contemplates "something more than a one-sided presentation of facts.").
In summary, even if Colorado law requires application of issue preclusion to the Plaintiffs default judgment, § 1738 does not because the provisions of § 523(c) implicitly repeal it with regard to default judgments in dischargeability litigation to which § 523(c) applies. Applicable federal principles of issue preclusion provide no basis for giving it issue preclusive effect. The Debtor appeared and initially contested the lawsuit with preliminary motions, but once litigation on the merits commenced after denial of his motion to dismiss, he promptly abandoned the litigation. He did nothing to prolong, frustrate, or abuse the judicial process. The fraud issue was not actually litigated, and the facts here do not show the type of conduct found in Bush, Whelan, and Graham that justifies issue preclusion because it is effectively equivalent to actual litigation.
C. Exercise of Discretion
To the extent that the application of issue preclusion is discretionary, Parklane Hosiery Co. v. Shore, 439 U.S. 322, 331, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush), 62 F.3d 1319, 1325 n. 8 (11th Cir.1995), which it may not be if Colorado law requires issue preclusion here and there is no exception to 28 U.S.C. § 1738 for default judgments in dischargeability litigation, cf. Hoskins v. Yanks (In re Yanks), 931 F.2d 42 (11th Cir.1991) (remanding for entry of judgment of nondischargeability based on issue preclusive effect of state court judgment based on jury verdict), the Court in the exercise of such discretion would not apply issue preclusion in the circumstances of this case for three reasons. First, the state court record does not provide an adequate basis to satisfy the Court that fraud actually occurred. Second, although the Court does not question the Debtor's actual notice of the minute order that advised him of the consequences of failure to attend the status conference, the Court is concerned that the imposition of default for that failure, without an additional opportunity to defend and more formal notice of the consequences, should fairly prevent litigation of its dischargeability. It is highly unlikely that the Debtor had any notion that his failure to appear at the status conference could have disastrous consequences in a later bankruptcy case. Finally, the Debtor in any event promptly gave up and did not engage in any type of improper conduct *305 beyond his failure to attend a single status conference. Taking these and the other facts and circumstances into account, the Court is left with the impression that it would be fundamentally unfair to apply issue preclusion to this default judgment. Cf. Parklane Hosiery Co., 439 U.S. at 330-31 & n. 15, 99 S.Ct. 645.

III. CONCLUSION
For reasons set forth above, the Court concludes that Colorado law does not require that the default judgment be given issue preclusive effect. If it does, the Court alternatively concludes that the full faith and credit statute, 28 U.S.C. § 1738, does not require issue preclusion because the policy of the Bankruptcy Code and the vesting of exclusive jurisdiction over dischargeability determinations under 11 U.S.C. § 523(a)(2)(A) in the bankruptcy courts under 11 U.S.C. § 523(c) establish a Congressional intent to except state court default judgments from its operation in such dischargeability litigation. In this regard, the Court further concludes that issue preclusion is not appropriate in this case under federal issue preclusion standards applicable in dischargeability litigation under Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Finally, the Court in the exercise of its discretion would not apply issue preclusion to the default judgment under the circumstances here to the extent that it has such discretion.
Because issue preclusion does not apply, the Court determines, based on its findings of fact and conclusions of law announced at the conclusion of the trial of this matter, which are now made the final findings of fact and conclusions of law in this proceeding, that the default judgment is not excepted from discharge under 11 U.S.C. § 523(a)(2)(A). A separate judgment will be entered.

JUDGMENT
This adversary proceeding having come on for trial and the issues having been duly heard, and based on the Court's findings of fact and conclusions of law as announced on the record, summarized in this Court's Order entered on August 1, 2006, and formally entered as such pursuant to this Court's further Order of even date, it is hereby
ORDERED and ADJUDGED that the debt of the Defendant to the Plaintiff is not excepted from discharge under 11 U.S.C. § 523(a) and, therefore, is dischargeable under 11 U.S.C. § 727.
NOTES
[1] Restatement (Second) § 27 states, "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Comment e to § 27 explains, "In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, the rule of this Section does not apply with respect to any issue in a subsequent action."
[2] The Court refers to the Plaintiff's exhibits introduced at trial by "PX-" followed by a number, and to the Plaintiff's exhibits attached to its Motion to Supplement Trial Record [32], which the Court granted [34] by "PX-" followed by a letter. PX-1 consists of papers in the record in the previous litigation that are separately identified by letters. The Colorado court's docket is at the beginning of PX-1.
[3] in view of the Court's conclusion that, as a matter of Colorado law, issue preclusion does not apply to the Plaintiff's default judgment because the issues were not actually litigated, the Court need not address whether, in a default situation, the dramatic difference between the entry of a money judgment in a state court action and the determination in a later bankruptcy case that the judgment is nondischargeable could be such a significant variation in exposure that a defaulting debtor should not fairly be bound by the consequences of the default due to the lack of incentive to litigate. Cf. Sunny Acres Villa, Inc. v. Cooper, 25 P.3d 44, 47 (Colo.2001) ("A party necessarily lacks the same incentive to defend where its exposure to liability is substantially less at the earlier proceeding. In addition to the amount of potential money awards, significant variations in exposure may arise from differences in the finality or permanence of judgments." (Citation omitted)).
[4] Two of the cases involved state court default judgments against the debtor. In one, the court ruled that collateral estoppel does not apply in dischargeability litigation to a default judgment. Spilman v. Harley, 656 F.2d 224, 228 (6th Cir.1981). In the other, the court ruled that the state court record on which the default judgment was based did not contain sufficiently detailed facts to meet the federal test of nondischargeability. Harold V. Simpson & Co. v. Shuler (In re Shuler), 722 F.2d 1253, 1257-58 (5th Cir.1984).
[5] See, e.g., Capital One Bank v. Bungert (In re Bungert), 315 B.R. 735 (Bankr.E.D.Wis.2004); FDS National Bank v. Alam (In re Alam), 314 B.R. 834 (Bankr.N.D.Ga.2004); Fleet Credit Card Svcs., L.P. v. Kendrick (In re Kendrick), 314 B.R. 468 (Bankr.N.D.Ga.2004); Citibank (South Dakota), N.A. v. Brobsten (In re Brobsten), 2001 WL 34076352 (Bankr.C.D.Ill. 2001). See generally Margaret Howard, Shifting Risk and Fixing Blame: The Vexing Problem of Credit Card Obligations in Bankruptcy, 75 Am. Bankr.L.J. 63 (2001); Elizabeth Lea Black, Annotation, Credit Card Debt as Nondischargeable Under Bankruptcy Code Provision Concerning Nondischargeability of Individual Debt Obtained Through False Pretenses, False Representation, or Actual Fraud, Other Than Statement Respecting Debtor's or Insider's Financial Condition (11 U.S.C.A. 523(a)(2)(A)), 158 A.L.R. Fed. 189 (1999).