136 F.3d 1134
 Lawrence F. STEPHAN, a citizen of Illinois, and Patricia L.
Stephan, a citizen of Illinois, Plaintiffs-Appellees,
v.
ROCKY MOUNTAIN CHOCOLATE FACTORY, INC., a Colorado
corporation, Defendant-Appellant.
 Nos. 96-4171, 97-1798.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 9, 1997.
Decided Feb. 13, 1998.
 
 Mitchell Bryan (argued), Scott H. Reynolds, Levenfeld, Eisenberg, Janger, Glassberg & Samothy, Chicago, IL, for Plaintiffs-Appellees in No. 96-4171.
 Mitchell Bryan (argued), Levenfeld, Eisenberg, Janger, Glassberg & Samothy, Chicago, IL, for Plaintiffs-Appellees in No. 97-1798.
 George N. Vurdelja, Jr. (argued), Griswold L. Ware, Vurdelja & Heaphy, Chicago, IL, for Defendant-Appellant in No. 97-4171.
 George N. Vurdelja, Jr. (argued), Vurdelja & Heaphy, Chicago, IL, for Defendant-Appellant in No. 97-1798.
 Before CUDAHY, RIPPLE and KANNE, Circuit Judges.
 CUDAHY, Circuit Judge.
 
 
 1
 The threshold issue in this appeal is whether a default judgment results in issue preclusion under Colorado law. In an opinion issued on November 10, 1997, we stayed this appeal and certified a question to the Colorado Supreme Court. That court refused the certification without additional comment. In this opinion, we wrestle with how the Colorado Supreme Court would have ruled if it had accepted certification, and conclude it would have found that the default judgment in this case prevents the appellee from litigating his personal liability under a sublease.
 
 I. Background
 
 2
 We provided a detailed summary of the events leading up to this appeal in our original opinion certifying to the Colorado Supreme Court, Stephan v. Rocky Mountain Chocolate Factory, Inc., 129 F.3d 414, 415-16 (7th Cir.1997) (Rocky Mountain I). To review briefly, the identity of a sublessee is at the root of the controversy between Rocky Mountain Chocolate Factory, Inc. (Rocky Mountain) and Lawrence and Patricia Stephan. Rocky Mountain, a Colorado corporation and a franchisor of retail confectionary stores, granted a Chicago franchise to Rocky Mountain Chocolate Factory of Illinois (Rocky Mountain-Illinois), a company formed by the Stephans. Rocky Mountain also leased space for the Chicago store, which it then subleased. Rocky Mountain argues that its sublessee was a combination of Rocky Mountain-Illinois and the Stephans; the Stephans, not surprisingly, insist that the sole sublessee was Rocky Mountain-Illinois. But whatever its true identity, the sublessee was responsible for all rental payments.
 
 
 3
 When the sublessee failed to make some of these payments, Rocky Mountain covered the default. It then sued Rocky Mountain-Illinois and Lawrence in the district court for the county of La Plata, Colorado. Both defendants failed to appear, and the district court entered a default judgment against them. Rocky Mountain proceeded to register the Colorado judgment in the circuit court for Cook County, Illinois, after Lawrence made an unsuccessful motion to deny the registration. Eventually Rocky Mountain, Rocky Mountain-Illinois and the Stephans entered into a settlement agreement that satisfied the default judgment. The agreement, however, did not resolve all potential disputes between the parties. In a combined forcible entry and rent collection action against Rocky Mountain and Rocky Mountain-Illinois, the leasor of the Chicago store pursued claims that were accruing under the lease. The settlement agreement expressly stated that it did not release any claims that might result from the leasor's action.
 
 
 4
 The Stephans, concerned that Rocky Mountain might pursue them individually for liability arising out of the leasor's action, filed suit in federal district court and sought a declaration that they had no further financial exposure under the sublease. Rocky Mountain responded with a motion for dismissal or, alternatively, for summary judgment. The district judge dismissed the Stephans' complaint insofar as it pertained to Patricia,[1] and granted summary judgment sua sponte in favor of Lawrence, thereby concluding that he had no personal liability for performance of the sublease. Rocky Mountain filed a motion seeking relief from the adverse judgment pursuant to Rule 60(b), but did not prevail. It then appealed both the grant of summary judgment and the denial of its Rule 60(b) motion to this court.
 
 
 5
 In addition to the question of Colorado law, this appeal raises questions about the appropriateness of the district court's entry of summary judgment sua sponte, as well as whether the Illinois circuit court's refusal to deny recognition to the default judgment has issue-preclusive effect under Illinois law. Because we find that the default judgment in Colorado precludes Lawrence from litigating his financial exposure under the sublease, we do not reach these other issues.
 
 II. Certification of the Question
 
 6
 As we explained in Rocky Mountain I, the doctrine of issue preclusion (formerly known as collateral estoppel) limits the litigation of issues that have been decided in a previous action. In the proceeding before the Colorado court, Rocky Mountain's complaint alleged that Lawrence was personally liable under the sublease. As a necessary predicate to a possible grant of summary judgment, the district judge had to determine whether the default judgment "decided" that Lawrence was personally liable under the sublease and hence estopped him from relitigating that issue. Because a Colorado court rendered the default judgment, Colorado law governs whether the judgment has issue-preclusive effect. See 28 U.S.C. § 1738 (full faith and credit statute); Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380, 105 S.Ct. 1327, 1331-32, 84 L.Ed.2d 274 (1985). The district judge, in a careful and well-reasoned opinion and without the benefit of precedent from the Colorado Supreme Court, concluded that the default judgment did not give rise to issue preclusion.
 
 
 7
 In resolving this puzzling matter, the district court emphasized that a majority of federal courts, the Restatement (Second) of Judgments § 27, and commentators such as Charles Wright, Arthur Miller, and Edward Cooper have rejected the notion that a default judgment results in issue preclusion. Although this is persuasive evidence of how the Colorado Supreme Court might rule, in Rocky Mountain I we were concerned about two opinions from the Colorado Court of Appeals that, while not on all fours with the instant case, nonetheless suggested that Colorado may have bucked the national trend. We also noted, as did the district judge, that, as recently as 1996, a state supreme court had held that default judgments have issue-preclusive effect. See TransDulles Center, Inc. v. Sharma, 252 Va. 20, 472 S.E.2d 274, 276 (1996). In light of the conflicting authority and our uncertainty about the application of the prior Colorado Court of Appeals decisions, we certified a question to the Colorado Supreme Court. But that court promptly refused the certification, as is its right.
 
 
 8
 As a result of this flea-flicker, we find ourselves back behind the line of scrimmage and still confronted with the threshold question: under Colorado law, does the default judgment rendered against Lawrence estop him from litigating the issue of his personal liability under the sublease? As we tackle this question for a second time, we admittedly are tempted to attribute some meaning to the Colorado Supreme Court's refusal of our certified question. Does it reflect implicit approval of prior statements of the Colorado Court of Appeals? This interpretation seems plausible. Or perhaps it connotes agreement with the opinion of the federal district judge? This seems less likely. But, in any event, like the usual denial of certiorari by the United States Supreme Court, see generally Peter Linzer, The Meaning of Certiorari Denials, 79 Colum.L.Rev. 1227 (1979), refusals of certified questions have no precedential significance. Accordingly, we will try to approach the issue whether the default judgment gave rise to issue preclusion without ascribing any particular significance to the disappointing response of the Colorado Supreme Court.
 
 III. Analysis
 
 9
 Because we sit in diversity jurisdiction, we must attempt to resolve the question of issue preclusion in the same manner as would the Colorado Supreme Court. See Todd v. Societe BIC, 9 F.3d 1216, 1221 (7th Cir.1993) (en banc) (plurality opinion). The task of predicting how a state supreme court would rule is never simple, and for reasons we will elaborate, the question of how the Colorado Supreme Court would construe its law on default judgments is particularly difficult. But while we remain impressed by the district judge's analysis, we are inclined to give more weight than he did to authority from the Colorado Court of Appeals. We believe that this authority indicates that the Colorado Supreme Court would find that the default judgment rendered by the Colorado court estops Lawrence from litigating his liability under the sublease. Accordingly, we reverse and remand so that Rocky Mountain may win summary judgment.
 
 
 10
 We previously have observed that in the absence of authority from the highest court of a state, "this court must follow authority from the state intermediate appellate court if it represents a sound, or even defensible, prediction" of how the state's highest court would rule on an issue. McCoy v. Richards, 771 F.2d 1108, 1110 (7th Cir.1985); see Indianapolis Airport Auth. v. American Airlines, Inc., 733 F.2d 1262, 1272 (7th Cir.1984). We also have suggested that when a state's intermediate appellate decisions are uniform, they are particularly strong indicators of how the state supreme court would decide a similar question. Cf. General Accident Ins. Co. of Am. v. Gonzales, 86 F.3d 673, 675 (7th Cir.1996). The Colorado Court of Appeals twice has addressed, in reported decisions, the issue-preclusive effects of default judgments. See Aspen Plaza Co. v. Garcia, 691 P.2d 763 (Colo.Ct.App.1984); Ortega v. Board of County Comm'rs, 683 P.2d 819 (Colo.Ct.App.1984). The court found, in both cases, that a default judgment resulted in collateral estoppel.
 
 
 11
 We explained in Rocky Mountain I that because the facts in Ortega are distinguishable from those in this case, we were hesitant to rely on Ortega in determining how the Colorado Supreme Court would rule if confronted with Rocky Mountain's appeal. See Rocky Mountain I, 129 F.3d at 417. In Ortega, the plaintiff brought suit claiming ownership of a tract of land and requesting the country treasurer to issue him a deed. The plaintiff, however, had a default judgment issued against him in an earlier lawsuit in which certain individuals had sought to quiet title to the same tract of land. See Ortega, 683 P.2d at 820. The Colorado Court of Appeals found that collateral estoppel barred the plaintiff's current action. Id. at 821. In so finding, the Ortega court relied on Quality Sheet Metal Co. v. Woods, 2 Haw.App. 160, 627 P.2d 1128 (1981), an opinion which placed no emphasis on the defaulting party's degree of participation in the earlier action. In Quality Sheet, the Hawaiian court found that issue preclusion arose from a default judgment that had been entered after the defendant failed to answer a complaint. Quality Sheet, 627 P.2d at 1129. But the Ortega plaintiff had participated in the prior action against him. Indeed, he had been directed to appear and show cause why the county treasurer should not be preliminarily enjoined from issuing him a deed. The trial court also considered and denied his motion to dismiss the complaint. Ortega, 683 P.2d at 821. Thus the Ortega plaintiff's degree of participation in the initial lawsuit was more extensive than that of Lawrence, who failed even to appear in the Colorado court. Despite the Colorado Court of Appeals' reliance on Quality Sheet, we thought Lawrence's lack of participation in the earlier suit might be important. Hence we declined to declare Ortega dispositive.
 
 
 12
 The facts in Aspen, a case that the parties have not cited and that the district court does not appear to have considered, more closely resemble those in this appeal. Nonetheless, we were concerned that the posture of Aspen did not afford the Colorado Court of Appeals an occasion to consider the appropriateness of collateral estoppel where the defaulting party had minimal participation in the earlier suit. See Rocky Mountain I, 129 F.3d at 417. In Aspen, a lessee who refused to pay rent failed to appear or answer after the lessor began forcible entry and detainer proceedings. Eventually the trial court entered a default judgment in favor of the lessor. Later the lessee filed his own claim alleging constructive eviction and seeking recovery of a lost security deposit and similar damages. The constructive eviction claim was tried before a jury that returned a verdict in favor of the lessee. See Aspen, 691 P.2d at 764. On appeal, the lessor contended that the default judgment resolved the issue of possession and hence barred the lessee's suit. Significantly, the Aspen court agreed that the issue of possession was properly determined by the default judgment. Id. at 765. But the court also found that resolution of the lessee's constructive eviction did not depend on the issue of possession. Thus the default judgment did not bar the lessee's claim. Id. Because the application of issue preclusion did not control the outcome in Aspen, we hesitated to regard that case as controlling.
 
 
 13
 The foregoing recapitulation of our understanding of Ortega and Aspen helps explain why we certified the question whether issue preclusion barred Lawrence from litigating his financial exposure under the sublease. But while we have struggled with these cases, we conclude that they indicate how the Colorado Supreme Court would have ruled if it had accepted our certification. Both Ortega and Aspen postulate that issue preclusion applies to the issues subsumed within a default judgment. The plain language of Aspen and the citation in Ortega to Quality Sheet indicate that the Colorado Court of Appeals adheres to this rule regardless of the extent of the defaulting party's participation in the earlier lawsuit. Hence both Ortega and Aspen intimate that the Colorado Supreme Court would find that the default judgment estopped Lawrence's declaratory judgment action.
 
 
 14
 We have already stated that this court must follow authority from a state intermediate appellate court if the authority represents a defensible prediction of how the state's highest court would rule. See, e.g., McCoy, 771 F.2d at 1110. The position staked out in Ortega and Aspen is far from indefensible. As the federal district judge explained in his thorough opinion, the general rule once was that a default judgment gave rise to collateral estoppel. See Stephan v. Rocky Mountain Chocolate Factory, Inc., 948 F.Supp. 765, 772 (N.D.Ill.1996) (citing E.H. Schopler, Annotation, Doctrine of Res Judicata as Applied to Default Judgments, 77 A.L.R.2d 1410, 1419 (1961)). And although this once well-established rule has fallen into disfavor, see Restatement (Second) of Judgments § 27 cmt. e (1982) (reporting that issue preclusion does not stem from a default judgment), the Colorado Court of Appeals does not stand alone. The Virginia and Connecticut Supreme Courts recently have rejected the position of the Restatement. See TransDulles, 472 S.E.2d at 276; Jackson v. R.G. Whipple, Inc., 225 Conn. 705, 627 A.2d 374, 379 (1993). As the district judge recognized, TransDulles involved facts "strikingly similar" to those in this appeal: a tenant was unable to litigate whether he was personally responsible for accruing rents on the ground that a prior default judgment had adjudicated the issue. See 472 S.E.2d at 275. Hence Ortega and Aspen set forth defensible, and, for the moment at least, controlling statements of Colorado law.
 
 
 15
 It may be, as the district court suggests, that the Restatement and the majority of federal courts have adopted the "better rule." See Stephan, 948 F.Supp. at 773; see also In Re Dunston, 146 B.R. 269, 277-78 (D.Colo.1992). Indeed, this court has expressed its preference for the prescript that default judgments do not result in issue preclusion. United States v. Bailey, 957 F.2d 439, 443 (7th Cir.1992). Perhaps when the Colorado Supreme Court chooses to address this issue, it will adopt a position contrary to that of Ortega and Aspen. As Lawrence points outs, the Colorado Supreme Court, in another context, already has cited to § 27 of the Restatement. See Bennett College v. United Bank of Denver, 799 P.2d 364, 368 (Colo.1990) (deciding that issue preclusion does not necessarily arise from a settlement between the parties). But to date the Colorado Supreme Court has had opportunity to overrule Ortega and Aspen and has chosen not to do so. We feel that, in this instance, any change in Colorado law should come from a Colorado court. See Chang v. Michiana Telecasting Corp., 900 F.2d 1085, 1088 (7th Cir.1990) (explaining that federal courts are disinclined to make departures "in areas of the law that [they] have no responsibility for developing").
 
 
 16
 Accordingly, we REVERSE the district court and REMAND with an instruction to enter summary judgment in favor of Rocky Mountain.
 
 
 
 [1]
 As part of the settlement agreement, Rocky Mountain entered a covenant not to sue Patricia. In proceedings before the district court, Rocky Mountain conceded that it could not bring any claims against her, and hence there was no case or controversy that involved Patricia