# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 03-1847

IN RE: JOHN W. CATT, II.

APPEAL OF: SHIRLEY and GERALD HASH.

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. IP 02-0193 C—**Richard L. Young**, *Judge*.

_____

ARGUED JANUARY 14, 2004—DECIDED MAY 19, 2004

_____

Before FLAUM, *Chief Judge*, and POSNER and DIANE P.
WOOD, *Circuit Judges*.

POSNER, *Circuit Judge*. When John Catt, a builder, declared
bankruptcy, the Hashes, who had been joint venturers with
Catt and had obtained a fraud judgment against him in an
Indiana state court for almost half a million dollars, sought
a ruling from the bankruptcy judge that the judgment debt
to them was not dischargeable in bankruptcy. 11 U.S.C.
§ 523(a)(2)(A). The judge ruled, however, that the Hashes
could not use the doctrine of collateral estoppel to make the
state court's finding of fraud binding in the bankruptcy
proceeding; they would have to prove fraud anew in that
proceeding to defeat discharge. They declined to do so,
standing on their claim of collateral estoppel, and so the

bankruptcy judge ruled the debt dischargeable. The district judge affirmed, and the Hashes appeal. 28 U.S.C. § 158(d); *Mellon Bank, N.A. v. Dick Corp.*, 351 F.3d 290, 292 (7th Cir. 2003).

Mrs. Hash had been Catt's business manager. She and her husband had made a deal with Catt's building company (which has declared bankruptcy separately and is not a party to this case) to buy jointly a piece of land on which Catt would build a house. The plan was that when the house was sold, the Hashes and Catt would split the profits. Construction was delayed, building costs soared, and the parties had a falling out. Catt's company sued the Hashes for their share of the cost of the house and they counter-claimed for fraud and also filed a third-party complaint against Catt himself, whom they depict as the main perpe-trator of the fraud, the company being merely his cat's paw. The alleged fraud, so far as can be gleaned from a very sparse record, consisted of Catt's having obtained the Hashes' consent to use the construction loan from the bank to defray the exorbitant costs of construction that Catt had incurred, without telling the Hashes that to use the proceeds of the loan in this matter would just be to throw good money after bad.

A hearing was held two and a half weeks before the trial in the state court was scheduled to begin, to consider Catt's failure to cooperate in discovery. At the hearing Catt's lawyer indicated that Catt was planning to declare bank-ruptcy and didn't seem interested in continuing with the litigation. Later the lawyer filed a motion to withdraw as counsel on the ground that Catt wasn't cooperating with him. The judge granted the motion the day before the trial was to begin. The next day the Hashes and their lawyer appeared for the trial, but no Catt. The trial was short—no more than an hour or two. It consisted of a handful of ques-

tions asked the Hashes by their lawyer, and their answers. At the conclusion of the trial the lawyer submitted bare-bones findings and conclusions to the judge, who found fraud and awarded the Hashes $487,045.12 in damages, including $51,000 in punitive damages.

The effect of a judgment in subsequent litigation is determined by the law of the jurisdiction that rendered the judgment, 28 U.S.C. § 1738; *Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 136 F.3d 1134, 1136 (7th Cir. 1998), in this case Indiana, provided the judgment was rendered in a proceeding that comported with due process of law. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 480-81 (1982). One might suppose that findings made in default proceedings would never be given collateral estoppel (issue preclusion) effect because they are not based on a "full and fair" hearing—a standard formulation of the criterion for whether findings are entitled to such effect. E.g., *Extra Equipamentos e Exportação Ltda. v. Case Corp.*, 361 F.3d 359, 363 (7th Cir. 2004); *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 390-91 (2d Cir. 2003); *Richardson v. Navistar Int'l Transp. Corp.*, 231 F.3d 740, 743 (10th Cir. 2000). How could a hearing that is not "full and fair" comport with due process? Yet a significant minority of states, Indiana among them, allow findings made in default proceedings to collaterally estop, provided that the defaulted party could have appeared and defended if he had wanted to. *Grantham Realty Corp. v. Bowers*, 22 N.E.2d 832, 836 (Ind. 1939); *Small v. Centocor, Inc.*, 731 N.E.2d 22, 28 (Ind. App. 2000); *Progressive Casualty Ins. Co. v. Morris*, 603 N.E.2d 1380 (Ind. App. 1992); *Kirby v. Second Bible Missionary Church, Inc.*, 413 N.E.2d 330 (Ind. App. 1980); see also *Stephan v. Rocky Mountain Chocolate Factory, Inc.*, *supra*, 136 F.3d at 1136 (holding that a Colorado default judgment had issue-preclusive effect in bankruptcy discharge proceedings); *In re Cantrell*, 329 F.3d 1119 (9th Cir. 2003) (same,

California default judgment); *In re Canton*, 157 F.3d 1026, 1028-29 (5th Cir. 1998) (same, Illinois default judgment). For in such a case the party has in effect forfeited his right to a full and fair hearing.

Do these states have a deviant understanding of collateral estoppel, or, worse, are they violating due process? The answer to both questions is no.

Surprisingly, there is no uniform agreement on the criteria for giving findings collateral estoppel effect. The Supreme Court has said that they are entitled to such effect as long as there was an *opportunity* for a full and fair hearing, e.g., *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 332-33 (1979), which suggests that findings made in a default proceeding might well have such effect. But the Court has also suggested the contrary by ruling that an issue must be "actually litigated" for the resolution of it to collaterally estop. *Arizona v. California*, 530 U.S. 392, 414 (2000); see also *Restatement (Second) of Judgments* § 27, comment e, p. 257 (1982); 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4416 (2d ed. 1988). *Arizona v. California* involved findings made in a consent proceeding rather than in a default proceeding; but in holding that such findings do not collaterally estop unless the parties to the consent decree had indicated that they intended them to do so, the Court quoted with approval the passage in the *Restatement*, cited above, that says that findings made in default proceedings are not to be given collateral estoppel effect either. An old Supreme Court decision, *Cromwell v. County of Sac*, 94 U.S. 351, 356-57 (1876), actually says that findings in a default proceeding are not entitled to such effect.

To add further confusion, an issue could be "actually litigated" in a hearing that, maybe because of stringent limitations on the admissibility of evidence, was not full and

fair. *Standefer v. United States*, 447 U.S. 10, 22-23 (1980). This possibility makes the "actually litigated" requirement puzzling, yet many federal cases require, for collateral estoppel to attach, that an issue both be actually litigated *and* in a hearing that was full and fair. *National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 908 (6th Cir. 2001); *Popp Telcom v. American Sharecom, Inc.*, 210 F.3d 928, 939-40 (8th Cir. 2000); *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998). It is generally believed, therefore, that the federal rule is that default judgments are not entitled to collateral estoppel effect. Avi Rocklin & Kelly Lambert, "Taking a Default Judgment to the Bankruptcy Court," *Colo. Lawyer*, Oct. 1998, p. 69.

But the "federal rule" is necessarily a rule about federal judgments. All that is important in this case, given that the criteria for precluding relitigation of findings or a judgment are established by the jurisdiction that renders the judgment, is that due process does not require in every case either a hearing or that a particular issue be "actually litigated"; it requires that the party sought to be precluded have had an opportunity for a hearing. E.g., *Richards v. Jefferson County*, 517 U.S. 793, 797 n. 4 (1996); *United States v. James Daniel Good Real Property*, 510 U.S. 43, 48 (1993).

Catt had that. He says his lawyer didn't tell him he was withdrawing from the case, but even if that is true it does not relieve Catt from the consequences of his no-show default. He knew about the suit, of course; he knew that a trial was scheduled; he had no reasonable ground for thinking that the trial would not be held merely because his lawyer was quitting; and he could have sought a continuance to enable him to hire another lawyer. It is apparent that, as his lawyer thought, Catt was determined to bypass the state court litigation in the hope that any judgment

rendered against him in that suit would be wiped out by a discharge in his anticipated bankruptcy.

Thus, had there been no "trial" at all but merely the entry of a default judgment on motion by the Hashes when Catt failed to appear at the trial, the state court's finding of fraud, being an essential predicate of the judgment, would, under Indiana law and consistent with due process (and therefore binding on the bankruptcy court), have had the same collateral estoppel effect as if the finding had been made after a full adversary proceeding. So the fact that the "trial" which was actually held in the Indiana state court was a travesty of a trial, lacking as it did an adversary dimension or for that matter the kind of active judicial participation that characterizes the inquisitorial systems of the Continental European judiciaries—the fact that it was no better, really, than a default proceeding—cannot bail Catt out. *In re Bursack*, 65 F.3d 51, 54-55 (6th Cir. 1995). In general and in the present setting, the greater includes the lesser. If, as we have just held, a default judgment is entitled to preclusive effect, so must a judgment based on proceedings as abbreviated as this one—proceedings that were the functional equivalent of default proceedings— provided that the loser had a fair chance, which he booted, for a full and fair hearing.

We of course do not embrace a rule that would require giving preclusive effect to findings in every type of case that flunks the "full and fair hearing" test. If, whether by allowing himself to be defaulted or otherwise, a party has forfeited his right to such a hearing, he cannot complain; but if there is no waiver or forfeiture, then of course he can complain. Nor are we impressed by the suggestion in 18A Wright, Miller & Cooper, *supra*, § 4442, pp. 243-46, that even in jurisdictions that do not give collateral estoppel effect to findings made in default proceedings, findings made in one-

sided trials, as in this case, should be given that effect. All that such a rule would do would be to encourage plaintiffs to put on evidence in no-show cases, rather than simply moving then and there for the entry of a default judgment. Anyway we are not in such a jurisdiction.

We do not criticize the Hashes for proceeding as they did. There are two stages in a default proceeding: the establishment of the default, and the actual entry of a default judgment. Once the default is established, and thus liability, the plaintiff still must establish his entitlement to the relief he seeks. That required the Hashes, because they were not suing for a sum certain (such as the face amount of a promissory note), to introduce evidence on the damages caused them by Catt's fraud, as well as on any grounds they might have for also obtaining an award of punitive damages. Ind. Tr. Pro. R. 55(B); *Stewart v. Hicks*, 395 N.E.2d 308, 312 (Ind. App. 1979); cf. Fed. R. Civ. P. 55(b)(2); *Lowe v. McGraw-Hill Cos., Inc.*, 361 F.3d 335, 339-40 (7th Cir. 2004); *Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F.3d 151, 154-55 (2d Cir. 1999). "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id.* at 155 (citations omitted). The inquiry here was perfunctory. But all that the Hashes want to use the judgment for is the underlying finding of fraud, and under Indiana law they could have used it for that purpose even if there had been no hearing in the state court at all. The finding thus bound the bankruptcy judge.

REVERSED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*