**COLORADO WEST TRANSPORTATION, INC., Appellant,**

v.

**Arthur H. McMAHON, Jr., Appellee.**

**Civ.A. No. 1:07–CV–285–ODE.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 13, 2007.

---

Gustav H. Small, Jr., Kelly S. Scarbrough, Cohen Pollock Merlin Axelrod & Small, Atlanta, GA, Hana F. Brilliant, Ugo Colella, Katten Muchin Rosenman, LLP, Washington, DC, for Plaintiff.

Mathew Anthony Schuh, Jason Brian Godwin, Taylor Busch Slipakoff & Duma LLP, Atlanta, GA, for Appellee.

## ORDER

ORINDA D. EVANS, District Judge.

This case is before the Court on Appellant Colorado West Transportation Co., Inc.'s Appeal from a decision by the United States Bankruptcy Court for the Northern District of Georgia. Appellant has also filed a Request for Oral Argument [Doc. 4]. For the reasons set forth below, the decision of the Bankruptcy Court is REVERSED and REMANDED and; the Request for Oral Argument is DENIED.

### I. *Background*

#### A. *Facts*

The factual background of this case is undisputed, and the Court reproduces the factual summary of the Bankruptcy Court. *In re McMahon,* 356 B.R. 286, 289–90 (Bankr.N.D.Ga.2006).

In July 1996, Colorado West Transportation, Inc. ("Colorado West") sued McMahon in a Colorado court seeking unspecified damages based on fraud arising out of Colorado West's purchase in 1994 of the assets of Telluride Mountain Investments, Inc. ("TMI"), a corporation controlled by

McMahon. The complaint also asserted a claim for adjustments to the purchase price based solely on the contract in the liquidated amount of $24,839. (PX–1(A)).[1]

McMahon moved to dismiss for lack of service and jurisdiction (PX–1(E)), but withdrew the motion (PX–1(I), (J)). Instead of filing an answer, he moved to dismiss and/or for summary judgment, seeking dismissal of the complaint for failure to join TMI as an indispensable party, for lack of specificity in pleading fraud, and because certain contractual provisions barred the claims (PX–1(K)).

Because of the existence of disputed material facts, the Colorado court refused to dismiss (PX–D) and set a status conference for June 26, 1997. (PX–1, docket sheet). After McMahon's lawyers withdrew because McMahon could not pay them (PX–1(O)), the court rescheduled the status conference for July 23. The court's minute order stated in pertinent part, "[McMahon] will be expected to participate in all future [hearings] and should [he] fail to do so [he] may suffer default with an entry of judgment against [him]." (PX–1, docket sheet; next to last page of PX–1(O)).

McMahon did not attend the status conference (PX–1; docket sheet; last page of PX–1(O)), and Colorado West moved for default judgment on July 30 (PX–A). Attached to the motion for default judgment was an affidavit of Colorado West's principal, Sid Brotman, that states the basis for Colorado West's damages on the fraud claim. According to the affidavit, McMahon made false representations that overstated TMI's historical income. Because Mr. Brotman based the purchase price on a multiple of income, the affidavit concludes, Colorado West paid $375,000 more than it would have paid based on TMI's true income. The affidavit also requested damages on the contract claim in the liquidated amount of $24,829.

Although the notice to McMahon of the filing of the motion for default judgment stated that he had three days from the date of service on July 30 to respond (PX–B), the trial court entered default judgment two days later, on August 1, 1997 (PX–Q). The default judgment recites that McMahon had failed to appear at the status conference and that he was indebted to Colorado West in the amount of $399,829, plus interest. The judgment made no finding that McMahon had engaged in fraud.

The judgment did not specify how much was awarded on each of the two claims. Nevertheless, it is clear that the total judgment amount of $399,829 is the sum of the damages of $24,829 on the contract claim and $375,000, the amount the affidavit claims as damages due to fraud. It is, therefore, arithmetically clear that the default judgment awarded $375,000 on the fraud claim.

Some five years later, McMahon moved to set aside the default judgment in the Colorado court on the grounds that it had been entered without three days' prior notice as Colorado procedure requires and that he had meritorious defenses (PX–1(S)). On November 5, 2002, the court denied the motion, concluding that the failure to give proper notice was not jurisdictional and that McMahon had not sought relief within a reasonable time as Colorado law requires (PX–E).

---

1. The Court refers to Colorado West's exhibits introduced at trial by "PX–" followed by a number, and to Colorado West's exhibits attached to its Motion to Supplement Trial Record, which was granted by the Bankruptcy Court, by "PX–" followed by a letter. PX–1 consists of papers in the record in the previous litigation that are separately identified by letters. The Colorado court's docket is at the beginning of PX–1.

McMahon filed his chapter 7 bankruptcy case on October 21, 2004. Colorado West seeks a determination that McMahon's liability under the default judgment is excepted from discharge under 11 U.S.C § 523(a)(2)(A) due to the fact that Colorado West's cause of action was based on fraud.

### B. *Bankruptcy Court Proceedings*

The Bankruptcy Court held a trial, and determined that Colorado West had failed to prove all the elements of fraud necessary to except the judgment from discharged pursuant to § 523(a)(2)(A). *In re McMahon*, 356 B.R. at 290. The Bankruptcy Court further determined that, pursuant to Colorado state law:

> issue preclusion does not apply when a default judgment results from a debtor's abandonment of litigation prior to the filing of an answer, the commencement of discovery, and development of issues on the merits, rather than from abusive litigation tactics, and the trial court did not actually adjudicate any issues.

*Id.* at 296. Accordingly, the Bankruptcy Court declined to give preclusive effect to the Colorado state court's prior default judgment against McMahon. *Id.*

The Bankruptcy Court found that even if Colorado law requires giving preclusive effect to the default judgment against McMahon, § 523(c) of the Bankruptcy Code implicitly repeals the Full Faith and Credit Statute, 28 U.S.C. § 1738, with respect to the preclusive effect of state court default judgments. *Id.* at 297. Finally, the Bankruptcy Court concluded that, to the extent it had discretion to apply issue preclusion, it would not apply issue preclusion in the instant action. *Id.* at 304.

### II. *Jurisdiction and Standard of Review*

■ This Court has jurisdiction to review orders of bankruptcy judges under 28 U.S.C. § 158. "On appeal, the bankruptcy court's findings of fact are not to be set aside unless clearly erroneous, but questions of law may be freely examined." Fed.R.Bankr.P. 8013; *see also State Farm Mutual Auto. Insurance Co. v. Fielder*, 799 F.2d 656, 657 (11th Cir.1986). This Court must examine the bankruptcy court's factual findings for clear error but will review issues of law *de novo*. *In re Goerg*, 930 F.2d 1563, 1566 (11th Cir.1991).

### III. *Issues on Appeal*

The parties have presented five issues on appeal:

(1) Whether the Bankruptcy Court erred in holding that the dischargeability provision of the Bankruptcy Code (11 U.S.C. § 523) impliedly repealed the Full Faith and Credit statute (28 U.S.C. § 1738).

(2) Whether the Bankruptcy Court erred in holding that, under Colorado law, a state-court default judgment was not entitled to collateral estoppel effect in bankruptcy dischargeability proceedings.

(3) whether the Bankruptcy Court erred in holding that, under federal law, a state-court default judgment was not entitled to collateral estoppel effect in bankruptcy dischargeability proceedings.

(4) Whether the Bankruptcy Court erred in holding that, in the exercise of its discretion, a state-court default judgment was not entitled to collateral estoppel effect in bankruptcy dischargeability proceedings.

(5) Whether the Bankruptcy Court erred in holding that Appellant did not prove that Appellee's representations were false or that Appellant justifiably relied on those representations.

IV. *Request for Oral Argument*

Because the filings of the parties were sufficient to determine the issues on appeal/ Colorado West's Request for Oral Argument [Doc. 4] is DENIED.

V. *Discussion*

A. *The Full Faith and Credit Statute and the Dischargeability Provisions of the Bankruptcy Code*

■ Colorado West argues that the Bankruptcy Court erred in determining that the dischargeability provisions of the Bankruptcy Code, 11 U.S.C. § 523, implicitly repealed the Full Faith and Credit statute, 28 U.S.C. § 1738. Pursuant to 28 U.S.C. § 1738, the judicial proceedings of any State are granted "the same full faith and credit" in federal court as they would receive in the State's courts. In other words, federal courts must "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

■ Although there are exceptions to § 1738, an exception "will not be recognized unless a later statute contains an express or implied repeal." *Id.* at 468, 102 S.Ct. 1883. In deciding if an implied exception to § 1738 has been created, the "general question is whether the concerns underlying a particular grant of exclusive jurisdiction justify a finding of an implied partial repeal of § 1738." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 386, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). The determination "will depend on the particular federal statute as well as the nature of the claim or issue involved in the subsequent federal action.... [T]he primary consideration must be the intent of Congress." *Id.* The Supreme Court has rarely found an implied repeal of § 1738, "due to the relatively stringent standard for such findings, namely, that there be an 'irreconcilable conflict' between the two federal statutes at issue." *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 381, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996).

It is undisputed that § 523 of the Bankruptcy Code does not expressly repeal § 1738 in dischargeability litigation. It is likewise undisputed that § 523 vests exclusive authority in the bankruptcy courts to make specific determinations regarding dischargeability, including the exception to dischargeability based on fraud. 11 U.S.C. § 523(c). The Bankruptcy Court concluded that the exclusive grant contained in § 523(c) represents implied Congressional repeal of § 1738 "with regard to the issue preclusive effect of default judgment under state law" in a subsequent dischargeability determination. *McMahon*, 356 B.R. at 297.

■ Issue preclusion, formerly known as "collateral estoppel," stands for the proposition that any issue that was necessarily adjudicated in a prior judgment, may not be relitigated in a later proceeding. The Supreme Court explicitly and unequivocally recognized that "collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(c)" *Grogan v. Garner*, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The *Grogan* Court did not explicitly state whether federal or state law should govern the application of issue preclusion in discharge exception proceedings.

■ The distinction is important, because under federal principles of issue preclusion, a default judgment is not given issue preclusive effect, because the issues have not actually been litigated. *See e.g., Bush v. Balfour Beatty Bahamas, Ltd. (In*

*re Bush),* 62 F.3d 1319, 1323 (11th Cir. 1995). The federal approach generally follows the approach of § 27 of the Restatement (Second) of Judgments. Specifically, comment e to § 27 states;

> In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore the rule of [issue preclusion] does not apply with respect to any issue in a subsequent action.

*Restatement (Second) of Judgments,* § 27, comment e (1982). However, in some states, default judgments are given issue preclusive effect. *See e.g., In re Calvert,* 105 F.3d 315, 318 (6th Cir.1997) (applying California rule that default judgments are given issue preclusive effect); *In re Nourbakhsh,* 67 F.3d 798, 801 (9th Cir.1995) (applying Florida rule that default judgments are given issue preclusive effect).

The United States Court of Appeals for the Eleventh Circuit has explicitly held that in the context of bankruptcy discharge exception proceedings, " [i]f the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect." *In re St. Laurent,* 991 F.2d 672, 675–76 (11th Cir.1993). However, the Eleventh Circuit has left as an open question, whether the application of § 1738 "requires that a [state] default judgment be accorded preclusive effect in a bankruptcy discharge proceeding." *In re Bush,* 62 F.3d 1319, 1323, n. 6 (11th Cir.1995).

In finding that § 523(c) implicitly overruled § 1738 with respect to default judgments in state courts, the Bankruptcy Court relied on the Supreme Court's analysis of the legislative purpose § 523(c) in *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). In *Brown,* the Court recognized that a fundamental policy in bankruptcy law is to provide a "fresh start" to the "honest but unfortunate debtor." *Id.* at 128–29, 99 S.Ct. 2205. Accordingly, § 523(c) vested exclusive jurisdiction to the bankruptcy courts over dischargeability proceedings in order to "stop[ ] creditor abuse arising because debtors could not defend lawsuits and hav[e] bankruptcy courts develop expertise in applying federal law." *McMahon,* 356 B.R. at 300. Based on the concept of a "fresh start," the Bankruptcy Court concluded that:

> the Congressional policy in vesting exclusive authority in the bankruptcy courts to determine certain dischargeability issues under § 523(c) is to insure the proper determination of such issues that, in turn, is essential to a debtor's ability to obtain a "fresh start" that is a fundamental objective of the Bankruptcy Code. Imposing nondischargeability of a debt due to issue preclusion on account of a debtor's failure to litigate in a prior proceeding prevents the proper determination of dischargeability and thereby defeats a primary policy of the bankruptcy laws. Section 523(c) therefore, demonstrates a "countervailing statutory policy" of the type contemplated by *Brown v. Felsen* that establishes a Congressional intent to except default judgments in dischargeability litigation from the operation of § 1738.

*Id.* at 301.

■ The Court disagrees with the Bankruptcy Court's finding that § 523(c) repealed § 1738 with respect to default judgments entered in state courts. First, the Court notes that the "countervailing statutory policy" test invoked from *Brown* was not originally applied in the context of an implicit appeal analysis under § 1738. The appropriate test for determining whether a statute has implicitly repealed § 1738 is whether there is "an 'irreconcilable conflict' between the two federal stat-

utes at issue." *Matsushita*, 516 U.S. 367, 116 S.Ct. 873, 134 L.Ed.2d 6.

In fact, two United States Courts of Appeals have rejected the conclusion reached by the Bankruptcy Court. In *Nourbakhsh*, the United States Court of Appeals for the Ninth Circuit held that *Grogan* "conclusively" determined that Congress had not intended to except § 523 from § 1738, and gave issue preclusive effect to a default judgment rendered in a Florida court. 67 F.3d at 801. In *Calvert*, the United States Court of Appeals for the Sixth Circuit held that neither the Bankruptcy Code nor its legislative history "reveal anything that would suggest that Congress intended to exclude default judgments obtained in state court from the applicability of the Full Faith and Credit Statute in dischargeability proceedings in bankruptcy court." 105 F.3d at 320–21. In specifically rejecting the analysis of *Calvert*, the Bankruptcy Court stated that its decision was based on:

> the proposition that application of issue preclusion to a state court default judgment would require a debtor to defend a state court suit "to the hilt" to preserve the dischargeability of a debt even though no bankruptcy case is pending or contemplated and would enable a creditor to make a debt nondischargeable by reciting that it is based on fraud or some other ground of nondischargeability. [T]he [*Calvert*] court [did not] think that such a result contravened bankruptcy policy favoring litigation of such questions in bankruptcy courts. The court stated, "[T]his argument presumes that we do not have a system of law which expects, and in fact demands, that individuals sued respond to the suit and which subjects to liability those who do not.... The debtor is required to litigate the fraud issue when he litigates other issues in state court or he will be

bound by the judgment despite the policy."

*McMahon*, 356 B.R. at 302–03 (internal citations omitted). The Bankruptcy Court's decision was also based on the fact that:

> A debtor whose incomplete participation in a proceeding amounts to an abuse of the judicial process will face issue preclusion under federal issue preclusion principles. But a debtor who, without complicating or frustrating the litigation, initially defends but ultimately determines that he is unable to continue it is no more blameworthy than one who does not defend in the first instance.

*Id.* at 304. While this conclusion is based on the "fresh start" principle of § 523(c), the Court finds that no "irreconcilable conflict" exists between § 523(c) and § 1738. Given the rarity with which implicit repeals of § 1738 have been found, the Court declines to find one in the present case. *See Matsushita*, 516 U.S. at 380–81, 116 S.Ct. 873.

As *Calvert* and *Nourbakhsh* make clear, there are states where default judgments on fraud claims are considered to be a full and fair litigation of the fraud issue. Furthermore, there is nothing specific about fraud determinations that make them especially well suited for determination by a bankruptcy court. Although one purpose of § 523(c) is to give debtors a fresh start based on good-faith discharge of debts, there is no indication that Congress intended to repeal the application of the full faith and credit statute to all default judgments in state court proceedings. Where those judgments would not have preclusive effect, as in those states that follow the federal/restatement rule, bankruptcy courts should make the determinations provided in § 523(c). Where, however, a state gives preclusive effect to default judgments, the full faith and credit statute

requires the bankruptcy court to recognize the preclusive effect of any default judgment rendered by a state court.

Accordingly, the Court finds that the Bankruptcy Court erred in finding that the dischargeability provisions of § 523(c) implicitly repealed the Full Faith and Credit Statute with respect to state court default judgments. The Bankruptcy Court must give preclusive effect to the default judgment against McMahon on the issue of fraud, if the same effect would be given under Colorado law.

## B. *The Issue Preclusive Effect of Default Judgments Under Colorado Law*

The Bankruptcy Court concluded that, "under Colorado law, issue preclusion does not apply when a default judgment results from a debtor's abandonment of litigation prior to the filing of an answer, the commencement of discovery, and development of issues on the merits, rather than from abusive litigation tactics, and the trial court did not actually adjudicate any issues." *McMahon*, 356 B.R. at 296, Colorado West appeals this conclusion, and argues that the default judgment entered against McMahon is entitled to issue preclusive effect pursuant to Colorado law.

The Colorado Supreme Court has held that a default judgment "is a conclusive adjudication as to the matters and allegations properly averred in the complaint.... Unless set aside, it precludes urging anything contrary to the complaint." *Bettcher v. State ex rel. Attorney Gen.*, 140 Colo. 428, 344 P.2d 969, 971 (1959). With respect to issue preclusion, the Colorado Supreme Court has held that relitigation is barred if:

(1) The issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) The party against whom estoppel [is] sought was a party to or was in privity with a party to the prior proceeding; (3) There was a final judgment on the merits in the prior proceeding; [and] (4) The party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.

*Bebo Const. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84–85 (Colo.1999). The Bankruptcy Court determined that issue preclusion does not apply to the default judgment against McMahon, because the issue of fraud was not actually litigated. *McMahon*, 356 B.R. at 296. McMahon argues on appeal that none of the four elements of the Colorado issue preclusion doctrine are satisfied. Colorado West argues that all four elements are satisfied.

### 1. *Issue and Party Identity*

McMahon argues that a claim for fraud under Colorado law requires proof of reliance, while § 523 requires proof of "justifiable reliance." [Appellee's Brief, at 9–10]. Numerous federal courts including the Bankruptcy Court in the instant action, and multiple decisions from Colorado state courts, have rejected McMahon's argument that the elements of fraud are different under Colorado law and § 523. *See McMahon*, 356 B.R. at 291 ("Plaintiff correctly posits that fraudulent conduct under Colorado law is the same type of conduct that renders the liability nondischargeable under 11 U.S.C. § 523(a)(2)(A)"); *In re Dunston*, 146 B.R. 269, 278 (D.Colo.1992); *In re Austin*, 93 B.R. 723, 727 (Bankr.D.Colo.1988); *Brody v. Bock*, 897 P.2d 769, 776 (Colo.1995); *M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1382 (Colo.1994).

Justifiable reliance is a required element of fraud under Colorado law. Accordingly, the fraud issues implicated by the default judgment against McMahon

are identical to those presented to the Bankruptcy Court. Furthermore, there is no dispute that McMahon was a party to both proceedings. The first element of issue preclusion is therefore met.

### 2. *Final Judgment on the Merits*

 McMahon argues that because the Colorado default judgment did not distinguish between the breach of contract and fraud claims in the original Complaint, no final judgment on the merits has been made regarding the fraud claim currently at issue. McMahon relies on *In re St. Laurent*, which held that:

> [i]f the judgment fails to distinguish as to which of the two or more independent adequate grounds is the one relied upon, it is impossible to determine what issues were in fact adjudicated, and the judgment has no preclusive effect.

991 F.2d at 676. According to McMahon, the breach of contract claim and fraud claim represent undifferentiated, independent adequate grounds for the Colorado courts judgment.

The actual judgment entered against McMahon does not support this argument. Colorado West's initial Complaint alleged breach of contract and fraud based on two separate sets of facts. When the Colorado state court denied McMahon's motion for summary judgment it found that the "elements of fraud have been alleged." Furthermore, the judgment awarded damages to Colorado West of $399,829. This damage award was based on an affidavit submitted by Sid Brotman, Colorado West's principal, that specified Contract damages of $24,829, and fraud damages of $375,000. As the Bankruptcy Court concluded, the Colorado court's damage award makes "arithmetically clear that the default judgment awarded $375,000 on the fraud claim." *McMahon*, 356 B.R. at 290. In other words, the default judgment against McMahon was not based on two independent adequate grounds, and thus the judgment may be entitled to preclusive effect.

Finally, the Colorado law clearly established that default judgment "is a conclusive adjudication as to the matters and allegations properly averred in the complaint...." *Bettcher*, 344 P.2d at 971. Colorado West properly alleged fraud in its Complaint, and the Colorado court awarded damages based on the fraud claim.

Accordingly, the Court finds that a final judgment on the merits of Colorado West's fraud claim was entered.

### 3. *Actually Litigated and Necessarily Adjudicated*

The Bankruptcy Court determined that the default judgment against McMahon was not entitled to issue preclusive effect under Colorado law because the fraud claim was not actually litigated and necessarily adjudicated. The Bankruptcy Court analyzed Colorado state court cases, as well as federal court cases purporting to apply Colorado law, to conclude that "the Colorado Supreme Court ... would apply the rule of § 27 [of the Restatement (Second) ] that issue preclusion does not apply to a default judgment because issues are not actually litigated." Colorado West appeals that decision and argues that the Bankruptcy Court erred in its analysis of Colorado law.

In *Bebo*, the Colorado Supreme Court explained that in order to be actually litigated:

> the issue must be raised by a party through an appropriate pleading or tried with the consent of the parties, it must be submitted to the prior tribunal for determination, and it must be determined by that tribunal.

990 P.2d at 86. The Colorado Court of Appeals has also held that a default judgment is a final judgment and:

> precludes the relitigation, not only of the issues which were actually litigated in the first action, but also of all grounds of claim and defense which might have been properly litigated in the first action but were not litigated or decided.

*Ortega v. Br. of County Comm'rs of Costilla County,* 683 P.2d 819, 821 (Colo.App. 1984). In other words, "where ... a default judgment has been entered against a party who later seeks to litigate an issue disposed of in the prior litigation, the subsequent action is barred." *Id.* The United States Court of Appeals for the Seventh Circuit relied on *Ortega* to hold that, pursuant to Colorado state law, "issue preclusion applies to the issues subsumed within a default judgment." *Stephan v. Rocky Mountain Chocolate Factory, Inc.,* 136 F.3d 1134, 1138 (7th Cir.1998).[2]

> As the Bankruptcy Court acknowledged: If *Ortega* and *Stephan* govern this matter, [McMahon]'s default judgment would have preclusive effect in this litigation. The absence of actual litigation of the issue of fraud does not matter, and the Debtor's appearance and litigation of preliminary matters meets the standard of these cases of a full and fair opportunity to litigate the issue in the prior lawsuit.

356 B.R. at 292. However, the Bankruptcy Court relied on two decisions from the United States Bankruptcy Court for the District of Colorado, and one decision from the United States District Court for the District of Colorado to reach the conclusion that there are different rules for the preclusive effect of default judgments based on the level of participation by the defendant. Specifically, the Bankruptcy Court stated that:

> (1) A default judgment has no preclusive effect when a debtor does not defend at all; and (2) A default judgment has issue preclusive effect when a debtor fully participates in pretrial proceedings and the issues are fully developed on the merits through the pleadings and discovery.

*Id.* at 293.

In *In re Dunston,* the district court affirmed the bankruptcy court's refusal to give issue preclusive effect to a default judgement entered against a debtor who never appeared in state court. 146 B.R. 269, 277–78 (D.Colo.1992). The court found that " 'actual litigation' does not necessitate a full trial, but a full and fair opportunity for the defendant to present his case." *Id.* Furthermore, the court noted that "in state court actions leading up to bankruptcy filings, it is not uncommon that a party will put its energy into filing bankruptcy and decide that active participation in state court litigation is not worth the expense." *Id.* at 278.

> In *In re Mathias,* the court found that: Where ... there was no participation in the state court proceeding by the Defendant, no discovery, conducted and no evidence of 'fraud' presented, the matter was not 'actually litigated' by way of the default judgment.

No. 00–25188–CEM, 01–1090–SBB, 2001 WL 936345, *2–3 (Bankr.D.Colo. June 28, 2001). Specifically, the court noted that

---

2. The *Stephan* court also relied on the decision of the Colorado Court of Appeals in *Aspen Plaza Co. v. Garcia,* 691 P.2d 763 (Colo. App.1984). In *Aspen,* the court concluded that "[j]udgment by default is *res judicata* as to those matters pled and determined." *Id.* at

764. Although *Aspen* dealt with *res judicata,* or claim preclusion, rather than issue preclusion, the analysis is relevant to the preclusive effect of default judgments under Colorado state law. *See e.g., Carpenter v. Young,* 773 P.2d 561, 567 n. 8 (Colo.1989).

while the initial complaint in state court contained a claim of fraud, the affidavit on which default judgment was entered did not contain assertions that were "grounded in fraud." *Id.* at \*3, n. 1. Finally, in *In re Austin,* the bankruptcy court gave a default judgment issue preclusive effect because "[a]ll pleadings and discovery had been concluded, pre-trial procedures and preparation had been completed, and three trial dates arrived, only to be averted by the Debtor at, literally, the last hour." 93 B.R. 723, 727 (Bankr.D.Colo.1988).

Ultimately, the Bankruptcy Court rejected the analysis of *Ortega,* because the court determined that *Ortega* was actually a claim preclusion case, rather than an issue preclusion case. The court in *Ortega* stated that default judgments preclude "all grounds of claim and defense which might have been properly litigated in the first action but were not litigated or decided." 683 P.2d at 821, However, *Ortega* explicitly upheld the district court's application of the four-part test for issue preclusion under Colorado state law. *Id.* at 821. *Ortega* is a case about issue preclusion.

Furthermore, the Bankruptcy Court concluded that the Colorado Supreme Court has adopted the Restatement (Second) § 27 approach to issue preclusion on the basis of decisions addressing the application of issue preclusion in other contexts. *See e.g., Bennett Coll. v. United Bank of Denver,* 799 P.2d 364, 368 (Colo.1990) (finding that issue preclusion does not necessarily arise from a settlement between parties); *Bebo,* 990 P.2d at 84–85 (citing to § 27 in discussing the "actually litigated" and "full and fair opportunity" elements of issue preclusion); *Sunny Acres Villa, Inc. v. Cooper,* 25 P.3d 44 (Colo.2001). However, no Colorado state court has applied § 27 to the question presently before the Court regarding the issue preclusive effect of default judgments. *Ortega* remains the law in Colorado.

The *Ortega* and *Stephan* decisions are consistent with the *Bettcher* holding that a default judgment "is a conclusive adjudication as to the matters and allegations properly averred in the complaint.... Unless set aside, it precludes urging anything contrary to the complaint." 344 P.2d at 971. Furthermore, the decisions relied on by the Bankruptcy Court either misstate the Colorado law or are distinguishable on their facts. The *Dunston* court appears to have conflated two of the factors of issue preclusion, namely the actually litigated element and the full and fair opportunity element. 146 B.R. at 277. Also, unlike *Dunston,* there can be no argument that McMahon was preoccupied with filing bankruptcy and decided against active participation in the state court proceedings. *Id.* at 278.

In *Mathias,* the court determined that fraud was not actually litigated because there were no specific assertions present in the affidavit to support a finding of fraud. In the instant action, however, the affidavit on which default judgment was entered contained specific factual allegations related to fraud. Furthermore, the Colorado state court awarded damages that clearly indicated a finding of fraud. Unlike *Mathias* then, in the instant action "the state court's determination of the issue[ ] or fraud ... [was] necessary to, or part of, the resulting judgment." 2001 WL 936345, at \*3. The *Mathias* decision was based on the federal principles of issue preclusion as outlined in *In re Palmer,* 207 F.3d 566 (9th Cir.2000), a case where the underlying default judgment was entered in the United States Tax Court, rather than a Colorado state court. It is correct that under federal principles of issue preclusion, default judgments are not given preclusive effect, but the question in the instant action is whether default judgments are given preclusive effect under Colorado law. That question is unanswered by *Mathias* and *Palmer.*

Finally, the decision in *Austin* was not based on the application of the Full Faith and Credit Statute. The court determined that pursuant to the federal principles of issue preclusion, the underlying default judgment was actually litigated. *Austin,* 93 B.R. at 727. However, the court also acknowledged that "in Colorado, default judgments are given preclusive effect," and that if the Full Faith and Credit Statute applied, "[t]his theory ... provides a secondary basis on which Plaintiff may be entitled to summary judgment." *Id.* at 725–26, n. 2. In other words, it was unnecessary for the *Austin* court to decide whether the Full Faith and Credit Statute required application of Colorado issue preclusion doctrine, but the plaintiff was entitled to prevail under either federal or Colorado state principles.

The Court in the instant action has explicitly decided that the Full Faith and Credit Statute does require application of Colorado issue preclusion. *Austin* actually supports Colorado West's argument that the Bankruptcy Court erred in finding that the default judgment against McMahon was not entitled to issue preclusive effect under Colorado law.

 Ultimately the Court finds that pursuant to Colorado law, as established in *Ortega* and *Bettcher,* a properly entered default judgment is entitled to issue preclusive effect in subsequent litigation regardless of the level of participation of the defendant. The Colorado Supreme Court has not overruled *Ortega* and has never explicitly adopted the Restatement (Second) § 27 principles of issue preclusion. Entry of default judgment in a Colorado state court satisfies the issue preclusion requirement of actual litigation.

### 4. *Full and Fair Opportunity*

 McMahon claims that he was not afforded a full and fair opportunity to ad-dress the fraud claim in state court. Although the Bankruptcy Court did not make a finding regarding this element, Colorado West argues that the procedures followed by the state court were sufficient.

The Colorado Supreme Court has held that, in order to address the full and fair opportunity to litigate element, a court must determine:

> whether the remedies and procedures of the first proceeding are substantially different from the proceeding in which collateral estoppel is asserted; whether the party in privity with the party against whom collateral estoppel is sought had sufficient incentive to litigate vigorously; and the extent to which the issues are identical.

*Bebo,* 990 P.2d at 87. McMahon argues that he did not receive a full and fair opportunity because: (1) the Colorado state court failed to follow the proper notice requirements; and (2) he was never given an opportunity to present evidence or participate in the damages determination.

 First, with respect to deficient notice, the Colorado state court addressed this claim in denying McMahon's motion to set aside default judgment, which was filed in 2002. McMahon does not assert that this claim was not already litigated during the proceedings in 2002, and he therefore is precluded from relitigating it presently. McMahon did not seek appeal of the denial of his 2002 motion, and has offered no reason that the Court must take up this issue that has already been decided.

Second, McMahon offers no support for the argument that Colorado law required his participation in the damages determination. In fact, Rule 55(b) of the Colorado Rules of Civil Procedure makes hearings to determine damages upon the entry of default judgment discretionary. C.R.C.P.

55(b). McMahon cites to two cases that required a plaintiff to introduce evidence of damages and recognizing the right of a defendant to introduce his own evidence of damages. *In re Whelan*, 236 B.R. 495, 502–03 (Bankr.N.D.Ga.1999); *Sterling Factors, Inc. v. Whelan*, 245 B.R. 698, 709 (N.D.Ga.2000). However, those cases were decided on the basis of a Georgia statutory requirement, and have no bearing on the requirements in Colorado state courts. Accordingly, McMahon received a full and fair opportunity to litigate the fraud claim prior to the entry of default judgment.

 The Court finds that the Colorado state court default judgment against McMahon satisfies all four element of Colorado issue preclusion. Accordingly, the Court finds that the Bankruptcy Court erred in finding that the default judgment against McMahon was not entitled to issue preclusive effect on the issue of fraud pursuant to Colorado law.

C. *The Issue Preclusive Effect of the Default Judgment; Under Federal Law; the Bankruptcy Court's Exercise of Discretion? and the Bankruptcy Court's Finding that McMahon Did Not Defraud Colorado West.*

Because the Court has determined that the Bankruptcy Court was required to ap-ply Colorado principles of issue preclusion to the default judgment against McMahon, and that there is no exception to 28 U.S.C. § 1738 for default judgments in dischargeability proceedings, it is unnecessary to address Colorado West's arguments that the default judgment should have been given issue preclusive effect under federal principles of issue preclusion and that the Bankruptcy Court did not have adequate discretion to not apply issue preclusion. Furthermore, based on the Court's findings, the Bankruptcy Court's determination that McMahon did not defraud Colorado West was precluded by the prior default judgment.

VI. *Conclusion*

For the foregoing reasons, the decision of the Bankruptcy Court is REVERSED and REMANDED and the Request for Oral Argument is DENIED.